James E. Cecchi
**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey  07068
(973) 994-1700

David Freydin
Timothy A. Scott
**LAW OFFICES OF DAVID FREYDIN, PC**
8707 Skokie Blvd., Suite 305
Skokie, Illinois  60077
(847) 972-6157

Steve W. Berman
Sean R. Matt
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 8th Avenue, Suite 3300
Seattle, Washington  98101
(206) 623-7292

Jeffrey S. Goldenberg
**GOLDENBERG SCHNEIDER, L.P.A.**
One West Fourth Street, 18th Floor
Cincinnati, OH  45202-3604
(513) 345-4291

*Attorneys for Plaintiff and the Proposed Classes*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANTHONY CAPUTO, CATHERINE ROBERTS, KEITH HALL, FLAVIO MOY, A. ERIC NGWASHI, BOBBY HAMILTON, MARYANA MELNYK, PAUL HERRMANN, LYNN DOHERTY MUNOE, BRENDA O'NEAL, CHARLES WOLFORD, THOMAS WEISS, JOHN LAURINO, ANDREW DEUTSCH, MICHAEL MEDLER, DR. GREGORY CHAN, and LARS DANNBERG on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MERCEDES-BENZ USA, LLC, a Delaware Limited Liability Company, <br><br> Defendant. | Civil Action No. <br><br><br><br> **COMPLAINT and** <br> **<u>DEMAND FOR JURY TRIAL</u>** |

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .......................................................................................................1

II.  JURISDICTION .......................................................................................................4

III.  VENUE .......................................................................................................................4

IV.  PARTIES .....................................................................................................................5

    A.  New Jersey Plaintiff—Anthony Caputo ......................................................5

    B.  California Plaintiff—Catherine Roberts ......................................................6

    C.  Colorado Plaintiff—Keith Hall ...................................................................7

    D.  Florida Plaintiff—Flavio Moy .....................................................................9

    E.  Georgia Plaintiff—A. Eric Ngwashi .........................................................10

    F.  Georgia Plaintiff—Bobby Hamilton ..........................................................12

    G.  Illinois Plaintiff—Maryana Melnyk ..........................................................13

    H.  Illinois Plaintiff—Paul Herrmann .............................................................14

    I.  Iowa Plaintiff—Lynn Doherty Munoe .......................................................16

    J.  Michigan Plaintiff—Brenda O'Neal ..........................................................17

    K.  Minnesota Plaintiff—Charles Wolford ......................................................19

    L.  New York Plaintiff—Thomas Weiss ..........................................................20

    M.  New York Plaintiff—John Laurino .............................................................22

    N.  Ohio Plaintiff—Andrew Deutsch ...............................................................23

    O.  Washington Plaintiff—Michael Medler .....................................................24

    P.  Washington Plaintiff—Dr. Gregory Chan .................................................26

    Q.  Wisconsin Plaintiff—Lars Dannberg .........................................................27

    R.  Defendant ....................................................................................................29

V.  FACTUAL ALLEGATIONS ...................................................................................30

    A.  The Environmental Challenges Posed by Diesel Engines and the United States Regulatory Response Thereto .....................................................30

    B.  The BlueTEC Technology ...........................................................................33

C.      Mercedes Advertised and Promoted BlueTEC as the World's Cleanest Diesel Engine. ...................................................................................................35

       1.      Mercedes advertised and promoted BlueTEC as low-emitting. ...............36

       2.      Mercedes advertised and promoted BlueTEC as environmentally friendly.38

       3.      Mercedes advertised and promoted BlueTEC as meeting and exceeding compliance with U.S. emissions standards in all 50 states. .......................39

D.      The Mercedes Deception .....................................................................40

E.      The Damage .........................................................................................46

VI.     TOLLING OF THE STATUTE OF LIMITATIONS.........................................48

A.      Discovery Rule Tolling........................................................................48

B.      Fraudulent Concealment Tolling .........................................................48

C.      Estoppel...............................................................................................49

VII.    CLASS ALLEGATIONS .................................................................................49

A.      Claims Brought on Behalf of the Nationwide Class and the New Jersey Subclass Under New Jersey Law...............................................................................54

COUNT I VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT (N.J.S.A.. §§ 56:8-1, *ET SEQ.*).........................................................................................54

COUNT II BREACH OF CONTRACT  (BASED ON NEW JERSEY LAW) ...........................55

COUNT III FRAUDULENT CONCEALMENT ............................................................57

B.      Claims Brought on Behalf of the California Subclass ...........................59

COUNT IV FRAUD BY CONCEALMENT UNDER CALIFORNIA LAW .............................59

COUNT V VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW  (CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*) ....................................................63

COUNT VI VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *ET SEQ.*) .............................................................65

COUNT VII VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*) ....................................................67

COUNT VIII BREACH OF CONTRACT  (BASED ON CALIFORNIA LAW) .......................69

C.      Claims Brought on Behalf of the Colorado Subclass ...........................70

COUNT IX VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT (COLO. REV. STAT. §§ 6-1-101, *ET SEQ.*)...................................................................70

COUNT X BREACH OF CONTRACT (BASED ON COLORADO LAW) ..............................73

COUNT XI FRAUDULENT CONCEALMENT (BASED ON COLORADO LAW)................74

    D.    Claims Brought on Behalf of the Florida Subclass...............................79

COUNT XII VIOLATIONS OF THE FLORIDA DECEPTIVE & UNFAIR TRADE PRACTICES ACT (FLA. STAT. §§ 501.201, *ET SEQ.*)...................................79

COUNT XIII BREACH OF CONTRACT (BASED ON FLORIDA) .........................................82

COUNT XIV FRAUDULENT CONCEALMENT (BASED ON FLORIDA LAW)..................83

    E.    Claims Brought on Behalf of the Georgia Subclass ............................88

COUNT XV VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT (GA. CODE ANN. § 10-1-390, *ET SEQ.*)..............................................88

COUNT XVI VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE  PRACTICES ACT (GA. CODE ANN. § 10-1-370, *ET SEQ.*).................................88

COUNT XVII BREACH OF CONTRACT (BASED ON GEORGIA LAW)............................91

COUNT XVIII FRAUD BY CONCEALMENT...........................................................................92

    F.    Claims Brought on Behalf of the Iowa Subclass ...................................97

COUNT XIX VIOLATIONS OF THE PRIVATE RIGHT OF ACTION FOR  CONSUMER FRAUDS ACT (IOWA CODE § 714H.1, *et seq.*) ..................................97

COUNT XX BREACH OF CONTRACT (BASED ON IOWA LAW) ....................................100

COUNT XXI FRAUD BY CONCEALMENT ...........................................................................101

    G.    Claims Brought on Behalf of the Illinois Subclass.............................106

COUNT XXII VIOLATION OF ILLINOIS CONSUMER FRAUD AND  DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1, *ET SEQ.* AND 720 ILCS 295/1A) ..106

COUNT XXIII BREACH OF CONTRACT (BASED ON ILLINOIS LAW)...........................108

COUNT XXIV FRAUD BY CONCEALMENT .........................................................................110

    H.    Claims Brought on Behalf of the Michigan Subclass..........................115

COUNT XXV VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT  (MICH. COMP. LAWS § 445.903, *et seq.*) ....................................................115

COUNT XXVI BREACH OF CONTRACT (BASED ON MICHIGAN LAW).......................118

COUNT XXVII FRAUD BY CONCEALMENT .......................................................................119

    I.    Claims Brought on Behalf of the Minnesota Subclass .......................124

COUNT XXVIII VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT  (MINN. STAT. § 325F.68, *et seq.*)............................................................124

COUNT XXIX BREACH OF CONTRACT (BASED ON MINNESOTA LAW)....................126

COUNT XXX FRAUD BY CONCEALMENT....................................................................128

    J.    Claims Brought on Behalf of the New York Subclass ........................................133

COUNT XXXI VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (N.Y. GEN. BUS. LAW § 349) ...............................................................................................133

COUNT XXXII VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350 (N.Y. GEN. BUS. LAW § 350) ...............................................................................................134

COUNT XXXIII BREACH OF CONTRACT (BASED ON NEW YORK LAW) ...................135

COUNT XXXIV FRAUD BY CONCEALMENT.................................................................137

    K.    Claims Brought on Behalf of the Ohio Subclass .................................................142

COUNT XXXV VIOLATIONS OF THE CONSUMER SALES PRACTICES ACT (OHIO REV. CODE §§ 1345.01, *ET SEQ.*) ..............................................................................142

COUNT XXXVI FRAUD BY CONCEALMENT UNDER OHIO LAW.................................143

COUNT XXXVII BREACH OF CONTRACT  (BASED ON OHIO LAW) ...........................148

    L.    Claims Brought on Behalf of the Washington Subclass......................................149

COUNT XXXVIII VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT (WASH. REV. CODE ANN. §§ 19.86.010, *ET SEQ.*)....................................................149

COUNT XXXIX BREACH OF CONTRACT (BASED ON WASHINGTON LAW) .............151

COUNT XXXX FRAUD BY CONCEALMENT....................................................................152

    M.    Claims Brought on Behalf of the Wisconsin Subclass ........................................157

COUNT XXXXI VIOLATIONS OF THE WISCONSIN  DECEPTIVE TRADE PRACTICES ACT (WIS. STAT. § 110.18).........................................................................................157

COUNT XXXXII BREACH OF CONTRACT (BASED ON WISCONSIN LAW).................159

COUNT XXXXIII FRAUD BY CONCEALMENT.................................................................160

DEMAND FOR JURY TRIAL ................................................................................................167

Plaintiffs Anthony Caputo, Catherine Roberts, Keith Hall, Flavio Moy, A. Eric Ngwashi, Bobby Hamilton, Maryana Melnyk, Paul Herrmann, Lynn Doherty Munoe, Brenda O'Neal, Charles Wolford, Thomas Weiss, John Laurino, Andrew Deutsch, Michael Medler, Dr. Gregory Chan, and Lars Dannberg (Plaintiffs), individually and on behalf of all others similarly situated (the "Class"), allege the following based upon the investigation of counsel, the review of scientific papers, and the investigation of experts:

## I.        INTRODUCTION

1.        In the wake of the major scandal involving Volkswagen and Audi diesel vehicles evading emissions standards with the help of certain software that turns off emissions controls when the vehicles are not being tested, reports and vehicle testing now indicate that Mercedes-Benz USA, LLC's (Mercedes) so called "Clean Diesel" vehicles emit far more pollution on the road than in lab tests and that these vehicles exceed federal and state emission standards.  Real world testing has recently revealed that these vehicles emit dangerous oxides of nitrogen (NOx) at levels ***many times higher than the United States Environmental Protection Agency permits***. The Mercedes "Clean Diesel" turns out to be far from "clean."

2.        Diesel engines pose a difficult challenge to the environment because they have an inherent trade-off between power, fuel efficiency, and emissions.  Compared to gasoline engines, diesel engines generally produce greater torque, low-end power, better drivability and much higher fuel efficiency.  But these benefits come at the cost of much dirtier and more harmful emissions.

3.        One by-product of diesel combustion is NOx, which generally describes several compounds comprised of nitrogen and oxygen atoms.  These compounds are formed in the cylinder of the engine during the high temperature combustion process.  NOx pollution contributes to nitrogen dioxide, particulate matter in the air, and reacts with sunlight in the

atmosphere to form ozone.  Exposure to these pollutants has been linked with serious health dangers, including serious respiratory illnesses and premature death due to respiratory-related or cardiovascular-related effects.  The United States Government, through the Environmental Protection Agency (EPA), has passed and enforced laws designed to protect United States citizens from these pollutants and certain chemicals and agents known to cause disease in humans.  Automobile manufacturers must abide by these U.S. laws and must adhere to EPA rules and regulations.

4.     In order to produce a diesel engine that has desirable torque and power characteristics, good fuel economy, and emissions levels low enough to meet the stringent European and United States governmental emission standards, Mercedes developed the BlueTEC™ diesel engine.  The BlueTEC name is a general trade name used to describe a number of in-cylinder and after-treatment technologies used to reduce emissions.  The primary emission control after-treatment technologies include a diesel particulate filter (DPF) and a selective catalytic reduction (SCR) system.  The DPF traps and removes particulate (soot) emissions, while the SCR system facilitates a chemical reaction to reduce NOx into less harmful substances, such as nitrogen and oxygen.

5.     In order to appeal to environmentally conscious consumers, Mercedes **vigorously** markets its BlueTEC vehicles as "the world's cleanest and most advanced diesel" with "ultra-low emissions, high fuel economy and responsive performance" that emits "up to 30% lower greenhouse-gas emissions than gasoline."  Mercedes represents that its BlueTEC vehicles "convert[] the nitrogen oxide emissions into harmless nitrogen and oxygen" and "reduces the nitrogen oxides in the exhaust gases by up to 90%."

- 2 -

6.     Additionally, Mercedes promotes its Clean Diesel vehicles as "Earth Friendly": "With BlueTEC, cleaner emissions are now an equally appealing benefit."   In fact, Mercedes proclaims itself "#1 in CO2 emissions for luxury vehicles."

7.     These representations are deceptive and false.   Mercedes has programmed its BlueTEC vehicles to turn off or otherwise limit the effectiveness of the NOx reduction systems during real-world driving.

8.     Mercedes recently admitted that a shut-off device in the engine management of certain BlueTEC diesel cars stops NOx cleaning when ambient temperatures drop below 50 degrees Fahrenheit and under other, unspecified circumstances.   And testing at highway speeds, at low temperatures, and at variable speeds, indicate a systemic failure to meet emissions standards.   Low temperature testing at highway speeds, for example, produced emissions that were 8.1 to 19.7 times the highway emissions standard.   Testing at low temperatures at variable speeds produced emissions as high as 30.8 times the standard.

9.     But testing has also revealed that Mercedes BlueTEC vehicles do not meet emission standards in virtually *all* real world driving conditions.   In virtually every road test at a variety of speeds and temperatures, the emissions exceeded emissions standards.

10.     Thus, Mercedes manufactures, designs, markets, sells, and leases certain "BlueTEC Clean Diesel" vehicles as if they were "reduced emissions" cars that comply with all applicable regulatory standards, when in fact, these Mercedes vehicles are not "clean diesels" and emit more pollutants than allowed by federal and state laws—and far more than their gasoline fueled counterparts.   On information and belief, Plaintiffs allege that the following Mercedes models powered by BlueTEC diesel fueled engines are affected by the unlawful, unfair, deceptive, and otherwise defective emission controls utilized by Mercedes:  ML 320, ML

- 3 -

350, GL 320, E320, S350, R320, E Class, GL Class, ML Class, R Class, S Class, GLK Class, GLE Class, and Sprinter (the Affected Vehicles).

11.     Mercedes never disclosed to consumers that Mercedes diesels with BlueTEC engines may be "clean" diesels in very limited circumstances, but are "dirty" diesels under most driving conditions.  Mercedes never disclosed that it prioritizes engine power and profits over people.  Mercedes never disclosed that its vehicles materially exceed applicable NOx limits in real world driving conditions.

12.     Plaintiffs bring this action individually and on behalf of all other current and former owners or lessees of Affected Vehicles.  Plaintiffs seek damages, injunctive relief, and equitable relief for Mercedes' misconduct related to the design, manufacture, marketing, sale, and lease of Affected Vehicles with unlawfully high emissions, as alleged in this Complaint.

## II.     JURISDICTION

13.     This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## III.     VENUE

14.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, where Mercedes was headquartered for most of the relevant time period.  Moreover, Mercedes has marketed, advertised, sold, and leased the Affected Vehicles within this District.

## IV.    PARTIES

**A.    New Jersey Plaintiff—Anthony Caputo**

15.    Plaintiff Anthony Caputo (for the purpose of this paragraph, "Plaintiff") is a citizen of New Jersey domiciled in Mt. Arlington, New Jersey.  On or about November 9, 2011, Plaintiff purchased a new 2012 Mercedes ML 350 BlueTEC from Mercedes of Caldwell in Caldwell, New Jersey.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited NOx reduction during normal driving conditions and emitted many multiples of the allowed level of pollutants such as NOx.  Mercedes' unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the ML 350 without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Mercedes knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel," complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

16.    Plaintiff selected and ultimately purchased his vehicle, in part, because of the BlueTEC Clean Diesel system, as represented through advertisements and representations made by Mercedes.  Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system.  None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the unlawfully high emissions and the fact that Mercedes had designed part of the emissions reduction system to turn off during normal driving conditions.  Had Mercedes disclosed this design, and the fact that the ML 350 actually emitted unlawfully

high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

17.     Each and every Plaintiff and each Class member has suffered an ascertainable loss as a result of Mercedes' omissions and/or misrepresentations associated with the BlueTEC Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

18.     Neither Mercedes nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully high emissions and/or defective nature of the BlueTEC Clean Diesel engine system of the Affected Vehicles prior to purchase.

**B.      California Plaintiff—Catherine Roberts**

19.     Plaintiff Catherine Roberts (for the purpose of this paragraph, "Plaintiff") is a citizen of Vermont domiciled in Montpelier, Vermont.  On or about February 2, 2016, Plaintiff purchased a used 2012 Mercedes Sprinter BlueTEC in Fresno, California.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited NOx reduction during normal driving conditions and emitted many multiples of the allowed level of pollutants such as NOx. Mercedes' unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Sprinter without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of her vehicle.  Mercedes knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased her vehicle on the reasonable, but mistaken, belief that her vehicle was a "clean diesel," complied

with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

20.     Plaintiff selected and ultimately purchased her vehicle, in part, because of the BlueTEC Clean Diesel system, as represented through advertisements and representations made by Mercedes.  Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system.  None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the unlawfully high emissions and the fact that Mercedes had designed part of the emissions reduction system to turn off during normal driving conditions. Had Mercedes disclosed this design, and the fact that the Sprinter actually emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

21.     Each and every Plaintiff and each Class member has suffered an ascertainable loss as a result of Mercedes' omissions and/or misrepresentations associated with the BlueTEC Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

22.     Neither Mercedes nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully high emissions and/or defective nature of the BlueTEC Clean Diesel engine system of the Affected Vehicles prior to purchase.

**C.     Colorado Plaintiff—Keith Hall**

23.     Plaintiff Keith Hall (for the purpose of this paragraph, "Plaintiff") is a citizen of Colorado domiciled in Arvada, Colorado.  On or about December 26, 2014, Plaintiff purchased a used 2011 Mercedes S Class BlueTEC from a private seller in Denver, Colorado.  Plaintiff

purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited NOx reduction during normal driving conditions and emitted many multiples of the allowed level of pollutants such as NOx.  Mercedes' unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the S Class without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Mercedes knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel," complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

24.     Plaintiff selected and ultimately purchased his vehicle, in part, because of the BlueTEC Clean Diesel system, as represented through advertisements and representations made by Mercedes.  Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system.  None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the unlawfully high emissions and the fact that Mercedes had designed part of the emissions reduction system to turn off during normal driving conditions. Had Mercedes disclosed this design, and the fact that the S Class actually emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

25.     Each and every Plaintiff and each Class member has suffered an ascertainable loss as a result of Mercedes' omissions and/or misrepresentations associated with the BlueTEC Clean

Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

26.     Neither Mercedes nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully high emissions and/or defective nature of the BlueTEC Clean Diesel engine system of the Affected Vehicles prior to purchase.

**D.     Florida Plaintiff—Flavio Moy**

27.     Plaintiff Flavio Moy (for the purpose of this paragraph, "Plaintiff") is a citizen of Florida domiciled in Miami, Florida.  On or about February 20, 2014, Plaintiff purchased a used 2012 Mercedes E Class BlueTEC from Carmax in Miami, Florida.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited NOx reduction during normal driving conditions and emitted many multiples of the allowed level of pollutants such as NOx.  Mercedes' unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the E Class without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Mercedes knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel," complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

28.     Plaintiff selected and ultimately purchased his vehicle, in part, because of the BlueTEC Clean Diesel system, as represented through advertisements and representations made by Mercedes.  Plaintiff recalls that the advertisements and representations touted the cleanliness

of the engine system for the environment and the efficiency and power/performance of the engine system.  None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the unlawfully high emissions and the fact that Mercedes had designed part of the emissions reduction system to turn off during normal driving conditions. Had Mercedes disclosed this design, and the fact that the E Class actually emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

29.     Each and every Plaintiff and each Class member has suffered an ascertainable loss as a result of Mercedes' omissions and/or misrepresentations associated with the BlueTEC Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

30.     Neither Mercedes nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully high emissions and/or defective nature of the BlueTEC Clean Diesel engine system of the Affected Vehicles prior to purchase.

**E.     Georgia Plaintiff—A. Eric Ngwashi**

31.     Plaintiff A. Eric Ngwashi (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia domiciled in Loganville, Georgia.  On or about October 7, 2015, Plaintiff purchased a new 2013 Mercedes ML 350 BlueTEC from Atlanta Luxury Motors in Duluth, Georgia.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited NOx reduction during normal driving conditions and emitted many multiples of the allowed level of pollutants such as NOx.  Mercedes' unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the ML 350 without proper emission controls has

caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle. Mercedes knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel," complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

32.     Plaintiff selected and ultimately purchased his vehicle, in part, because of the BlueTEC Clean Diesel system, as represented through advertisements and representations made by Mercedes.  Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system.  None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the unlawfully high emissions and the fact that Mercedes had designed part of the emissions reduction system to turn off during normal driving conditions. Had Mercedes disclosed this design, and the fact that the ML 350 actually emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

33.     Each and every Plaintiff and each Class member has suffered an ascertainable loss as a result of Mercedes' omissions and/or misrepresentations associated with the BlueTEC Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

34.     Neither Mercedes nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully high emissions and/or defective nature of the BlueTEC Clean Diesel engine system of the Affected Vehicles prior to purchase.

**F.     Georgia Plaintiff—Bobby Hamilton**

35.     Plaintiff Bobby Hamilton (for the purpose of this paragraph, "Plaintiff") is a citizen of Alabama domiciled in Phenix City, Alabama.  On or about December 24, 2013, Plaintiff purchased a used 2012 Mercedes E Class BlueTEC from Mercedes Benz of Columbus in Columbus, Georgia.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited NOx reduction during normal driving conditions and emitted many multiples of the allowed level of pollutants such as NOx.  Mercedes' unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the E Class without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Mercedes knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel," complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

36.     Plaintiff selected and ultimately purchased his vehicle, in part, because of the BlueTEC Clean Diesel system, as represented through advertisements and representations made by Mercedes.  Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system.  None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the unlawfully high emissions and the fact that Mercedes had

designed part of the emissions reduction system to turn off during normal driving conditions. Had Mercedes disclosed this design, and the fact that the E Class actually emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

37. Each and every Plaintiff and each Class member has suffered an ascertainable loss as a result of Mercedes' omissions and/or misrepresentations associated with the BlueTEC Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

38. Neither Mercedes nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully high emissions and/or defective nature of the BlueTEC Clean Diesel engine system of the Affected Vehicles prior to purchase.

**G.      Illinois Plaintiff—Maryana Melnyk**

39. Plaintiff Maryana Melnyk (for the purpose of this paragraph, "Plaintiff") is a citizen of Illinois domiciled in Elmwood Park, Illinois.  On or about October 18, 2014, Plaintiff purchased a used 2012 Mercedes S350 BlueTEC from Mercedes-Benz of Chicago in Chicago, Illinois.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited NOx reduction during normal driving conditions and emitted many multiples of the allowed level of pollutants such as NOx.  Mercedes' unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the S350 without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of her vehicle. Mercedes knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff

- 13 -

purchased her vehicle on the reasonable, but mistaken, belief that her vehicle was a "clean diesel," complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

40.     Plaintiff selected and ultimately purchased her vehicle, in part, because of the BlueTEC Clean Diesel system, as represented through advertisements and representations made by Mercedes.  Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system.  None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the unlawfully high emissions and the fact that Mercedes had designed part of the emissions reduction system to turn off during normal driving conditions.  Had Mercedes disclosed this design, and the fact that the S350 actually emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

41.     Each and every Plaintiff and each Class member has suffered an ascertainable loss as a result of Mercedes' omissions and/or misrepresentations associated with the BlueTEC Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

42.     Neither Mercedes nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully high emissions and/or defective nature of the BlueTEC Clean Diesel engine system of the Affected Vehicles prior to purchase.

**H.     Illinois Plaintiff—Paul Herrmann**

43.     Plaintiff Paul Herrmann (for the purpose of this paragraph, "Plaintiff") is a citizen of Illinois domiciled in Chicago, Illinois.  On or about September 10, 2011, Plaintiff purchased a

used 2008 Mercedes E320 BlueTEC from Mercedes Benz of Naperville in Naperville, Illinois. Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited NOx reduction during normal driving conditions and emitted many multiples of the allowed level of pollutants such as NOx.  Mercedes' unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the E320 without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle. Mercedes knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel," complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

44.    Plaintiff selected and ultimately purchased his vehicle, in part, because of the BlueTEC Clean Diesel system, as represented through advertisements and representations made by Mercedes.  Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system.  None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the unlawfully high emissions and the fact that Mercedes had designed part of the emissions reduction system to turn off during normal driving conditions. Had Mercedes disclosed this design, and the fact that the E320 actually emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

45. Each and every Plaintiff and each Class member has suffered an ascertainable loss as a result of Mercedes' omissions and/or misrepresentations associated with the BlueTEC Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

46. Neither Mercedes nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully high emissions and/or defective nature of the BlueTEC Clean Diesel engine system of the Affected Vehicles prior to purchase.

I.     **Iowa Plaintiff—Lynn Doherty Munoe**

47. Plaintiff Lynn Doherty Munoe (for the purpose of this paragraph, "Plaintiff") is a citizen of Florida domiciled in St. Augustine, Florida.  On or about May 2, 2016, Plaintiff purchased a new 2016 Mercedes Sprinter BlueTEC from Cheyenne Camping Center in Walcott, Iowa.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited NOx reduction during normal driving conditions and emitted many multiples of the allowed level of pollutants such as NOx.  Mercedes' unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing Sprinter vans without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of her vehicle.  Mercedes knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased her vehicle on the reasonable, but mistaken, belief that her vehicle was a "clean diesel," complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

48.    Plaintiff selected and ultimately purchased her vehicle, in part, because of the BlueTEC Clean Diesel system, as represented through advertisements and representations made by Mercedes.  Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system.  None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the unlawfully high emissions and the fact that Mercedes had designed part of the emissions reduction system to turn off during normal driving conditions. Had Mercedes disclosed this design, and the fact that the Sprinter van actually emitted unlawfully high levels of pollutants, Plaintiff would not have purchased this vehicle, or would have paid less for it.

49.    Each and every Plaintiff and each Class member has suffered an ascertainable loss as a result of Mercedes' omissions and/or misrepresentations associated with the BlueTEC Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

50.    Neither Mercedes nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully high emissions and/or defective nature of the BlueTEC Clean Diesel engine system of the Affected Vehicle prior to purchase.

**J.    Michigan Plaintiff—Brenda O'Neal**

51.    Plaintiff Brenda O'Neal (for the purpose of this paragraph, "Plaintiff") is a citizen of Michigan domiciled in Detroit, MI.  On or about March 14, 2014, Plaintiff purchased a used 2009 S Class BlueTEC from Landrover Lakeside in Sterling Heights, MI.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited NOx reduction during normal

driving conditions and emitted many multiples of the allowed level of pollutants such as NOx. Mercedes' unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the S Class without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of her vehicle. Mercedes knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased her vehicle on the reasonable, but mistaken, belief that her vehicle was a "clean diesel," complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

52.     Plaintiff selected and ultimately purchased her vehicle, in part, because of the BlueTEC Clean Diesel system, as represented through advertisements and representations made by Mercedes. Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the unlawfully high emissions and the fact that Mercedes had designed part of the emissions reduction system to turn off during normal driving conditions. Had Mercedes disclosed this design, and the fact that the S Class actually emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

53.     Each and every Plaintiff and each Class member has suffered an ascertainable loss as a result of Mercedes' omissions and/or misrepresentations associated with the BlueTEC Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted

repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

54.     Neither Mercedes nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully high emissions and/or defective nature of the BlueTEC Clean Diesel engine system of the Affected Vehicles prior to purchase.

**K.      Minnesota Plaintiff—Charles Wolford**

55.     Plaintiff Charles Wolford (for the purpose of this paragraph, "Plaintiff") is a citizen of California domiciled in Three Rivers, California.  In June 2013, Plaintiff purchased a new 2013 Mercedes ML 350 BlueTEC from Sears Imported Autos in Minneapolis, Minnesota.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited NOx reduction during normal driving conditions and emitted many multiples of the allowed level of pollutants such as NOx.  Mercedes' unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the ML 350 without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Mercedes knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel," complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

56.     Plaintiff selected and ultimately purchased his vehicle, in part, because of the BlueTEC Clean Diesel system, as represented through advertisements and representations made by Mercedes.  Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the

engine system.  None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the unlawfully high emissions and the fact that Mercedes had designed part of the emissions reduction system to turn off during normal driving conditions. Had Mercedes disclosed this design, and the fact that the ML 350 actually emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

57.     Each and every Plaintiff and each Class member has suffered an ascertainable loss as a result of Mercedes' omissions and/or misrepresentations associated with the BlueTEC Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

58.     Neither Mercedes nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully high emissions and/or defective nature of the BlueTEC Clean Diesel engine system of the Affected Vehicles prior to purchase.

**L.     New York Plaintiff—Thomas Weiss**

59.     Plaintiff Thomas Weiss (for the purpose of this paragraph, "Plaintiff") is a citizen of New York domiciled in Rome, New York.  On or about November 30, 2015, Plaintiff purchased a new 2015 Mercedes Sprinter BlueTEC from Camping World of Syracuse in Syracuse, New York.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited NOx reduction during normal driving conditions and emitted many multiples of the allowed level of pollutants such as NOx.  Mercedes' unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Sprinter without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of

his vehicle.  Mercedes knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel," complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

60.     Plaintiff selected and ultimately purchased his vehicle, in part, because of the BlueTEC Clean Diesel system, as represented through advertisements and representations made by Mercedes.  Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system.  None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the unlawfully high emissions and the fact that Mercedes had designed part of the emissions reduction system to turn off during normal driving conditions.  Had Mercedes disclosed this design, and the fact that the Sprinter actually emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

61.     Each and every Plaintiff and each Class member has suffered an ascertainable loss as a result of Mercedes' omissions and/or misrepresentations associated with the BlueTEC Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

62.     Neither Mercedes nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully high emissions and/or defective nature of the BlueTEC Clean Diesel engine system of the Affected Vehicles prior to purchase.

**M.      New York Plaintiff—John Laurino**

63.      Plaintiff John Laurino (for the purpose of this paragraph, "Plaintiff") is a citizen of Massachusetts domiciled in Orleans, Massachusetts.  On or about December 26, 2012, Plaintiff purchased a new 2013 Mercedes ML 350 BlueTEC from Estate Motors in Goldens Bridge, New York.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited NOx reduction during normal driving conditions and emitted many multiples of the allowed level of pollutants such as NOx.  Mercedes' unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the ML 350 without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Mercedes knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel," complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

64.      Plaintiff selected and ultimately purchased his vehicle, in part, because of the BlueTEC Clean Diesel system, as represented through advertisements and representations made by Mercedes.  Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system.  None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the unlawfully high emissions and the fact that Mercedes had designed part of the emissions reduction system to turn off during normal driving conditions. Had Mercedes disclosed this design, and the fact that the ML 350 actually emitted unlawfully

high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

65.    Each and every Plaintiff and each Class member has suffered an ascertainable loss as a result of Mercedes' omissions and/or misrepresentations associated with the BlueTEC Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

66.    Neither Mercedes nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully high emissions and/or defective nature of the BlueTEC Clean Diesel engine system of the Affected Vehicles prior to purchase.

**N.    Ohio Plaintiff—Andrew Deutsch**

67.    Plaintiff Andrew Deutsch (for the purpose of this paragraph, "Plaintiff") is a citizen of Ohio domiciled in Moreland Hills, Ohio.  On or about January 14, 2016, Plaintiff leased a new 2015 Mercedes GLK Class BlueTEC from a dealership in Cleveland, Ohio.  Plaintiff is currently leasing this vehicle.  Unknown to Plaintiff, at the time he entered into the lease for this vehicle, it was equipped with an emissions system that turned off or limited NOx reduction during normal driving conditions and emitted many multiples of the allowed level of pollutants such as NOx.  Mercedes' unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the GLK Class without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Mercedes knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that

his vehicle was a "clean diesel," complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

68.     Plaintiff selected and ultimately purchased his vehicle, in part, because of the BlueTEC Clean Diesel system, as represented through advertisements and representations made by Mercedes.  Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system.  None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the unlawfully high emissions and the fact that Mercedes had designed part of the emissions reduction system to turn off during normal driving conditions. Had Mercedes disclosed this design, and the fact that the GLK Class actually emitted unlawfully high levels of pollutants, Plaintiff would not have leased the vehicle, or would have paid less for it.

69.     Each and every Plaintiff and each Class member has suffered an ascertainable loss as a result of Mercedes' omissions and/or misrepresentations associated with the BlueTEC Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

70.     Neither Mercedes nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully high emissions and/or defective nature of the BlueTEC Clean Diesel engine system of the Affected Vehicles prior to purchase.

**O.     Washington Plaintiff—Michael Medler**

71.     Plaintiff Michael Medler (for the purpose of this paragraph, "Plaintiff") is a citizen of Washington domiciled in Bellingham, Washington.  On or about December 24, 2015, Plaintiff purchased a used 2015 Mercedes Sprinter BlueTEC from Wilson Motors in Bellingham,

Washington.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited NOx reduction during normal driving conditions and emitted many multiples of the allowed level of pollutants such as NOx.  Mercedes' unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Sprinter without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Mercedes knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel," complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

72.     Plaintiff selected and ultimately purchased his vehicle, in part, because of the BlueTEC Clean Diesel system, as represented through advertisements and representations made by Mercedes.  Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system.  None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the unlawfully high emissions and the fact that Mercedes had designed part of the emissions reduction system to turn off during normal driving conditions. Had Mercedes disclosed this design, and the fact that the Sprinter actually emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

73.     Each and every Plaintiff and each Class member has suffered an ascertainable loss as a result of Mercedes' omissions and/or misrepresentations associated with the BlueTEC Clean

Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

74.     Neither Mercedes nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully high emissions and/or defective nature of the BlueTEC Clean Diesel engine system of the Affected Vehicles prior to purchase.

**P.     Washington Plaintiff—Dr. Gregory Chan**

75.     Plaintiff Dr. Gregory Chan (for the purpose of this paragraph, "Plaintiff") is a citizen of Washington domiciled in Seattle, Washington.  On or about June 15, 2015, Plaintiff purchased a new 2015 E Class BlueTEC from Mercedes-Benz of Seattle in Seattle, Washington.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited NOx reduction during normal driving conditions and emitted many multiples of the allowed level of pollutants such as NOx.  Mercedes' unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the E Class without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of her vehicle.  Mercedes knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel," complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

76.     Plaintiff selected and ultimately purchased his vehicle, in part, because of the BlueTEC Clean Diesel system, as represented through advertisements and representations made by Mercedes.  Plaintiff recalls that the advertisements and representations touted the cleanliness

of the engine system for the environment and the efficiency and power/performance of the engine system.  None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the unlawfully high emissions and the fact that Mercedes had designed part of the emissions reduction system to turn off during normal driving conditions. Had Mercedes disclosed this design, and the fact that the E Class actually emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

77.     Each and every Plaintiff and each Class member has suffered an ascertainable loss as a result of Mercedes' omissions and/or misrepresentations associated with the BlueTEC Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

78.     Neither Mercedes nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully high emissions and/or defective nature of the BlueTEC Clean Diesel engine system of the Affected Vehicles prior to purchase.

**Q.     Wisconsin Plaintiff—Lars Dannberg**

79.     Plaintiff Lars Dannberg (for the purpose of this paragraph, "Plaintiff") is a citizen of Florida domiciled in West Palm Beach, Florida.  On or about November 22, 2103, Plaintiff purchased a new 2014 Mercedes E Class BlueTEC from Bergstrom Enterprise Motorcars in Appleton, Wisconsin.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited NOx reduction during normal driving conditions and emitted many multiples of the allowed level of pollutants such as NOx.  Mercedes' unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the E Class without proper emission

controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Mercedes knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel," complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

80.    Plaintiff selected and ultimately purchased his vehicle, in part, because of the BlueTEC Clean Diesel system, as represented through advertisements and representations made by Mercedes.  Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system.  None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the unlawfully high emissions and the fact that Mercedes had designed part of the emissions reduction system to turn off during normal driving conditions. Had Mercedes disclosed this design, and the fact that the E Class actually emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

81.    Each and every Plaintiff and each Class member has suffered an ascertainable loss as a result of Mercedes' omissions and/or misrepresentations associated with the BlueTEC Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

82.     Neither Mercedes nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully high emissions and/or defective nature of the BlueTEC Clean Diesel engine system of the Affected Vehicles prior to purchase.

## R.     Defendant

83.     Defendant Mercedes-Benz USA, LLC ("Mercedes") is a Delaware limited liability corporation whose principal place of business is 303 Perimeter Center North, Suite 202, Atlanta, Georgia, 30346.  Until approximately July 2015, Mercedes' principal place of business was 1 Mercedes Drive, Montvale, New Jersey 07645.  Mercedes' Customer Service Center is at 3 Mercedes Drive, Montvale, New Jersey 07645, and it operates a Learning and Performance Center at the same location.  Mercedes operates a regional sales office at Morris Corporate Center 3, Bldg. D, 400 Interpace Parkway, Parsippany, New Jersey 07054, and has a parts distribution center at 100 New Canton Way, Robbinsville, New Jersey 08691.  Mercedes' registered agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

84.     Mercedes, through its various entities, designs, manufactures, markets, distributes and sell Mercedes automobiles in New Jersey and multiple other locations in the United States and worldwide.  Mercedes and/or its agents designed, manufactured, and installed the BlueTEC Clean Diesel engine systems in the Affected Vehicles.   Mercedes also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Affected Vehicles.

## V.      FACTUAL ALLEGATIONS

A.      **The Environmental Challenges Posed by Diesel Engines and the United States Regulatory Response Thereto**

85.      The United States Government, through the Environmental Protection Agency (EPA), has passed and enforced laws designed to protect United States citizens from pollution and in particular, certain chemicals and agents known to cause disease in humans.  Automobile manufacturers must abide by these U.S. laws and must adhere to EPA rules and regulations.

86.      The U.S. Clean Air Act has strict emissions standards for vehicles, and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution.  Every vehicle sold in the United States must be covered by an EPA issued certificate of conformity.

87.      There is a very good reason that these laws and regulations exist, particularly as regards vehicles with diesel engines:  In 2012, the World Health Organization declared diesel vehicle emissions to be carcinogenic, and about as dangerous as asbestos.

88.      Diesel engines pose a particularly difficult challenge to the environment because they have an inherent trade-off between power, fuel efficiency, and emissions:  the greater the power and fuel efficiency, the dirtier and more harmful the emissions.

89.      Instead of using a spark plug to combust highly refined fuel with short hydrocarbon chains, as gasoline engines do, diesel engines compress a mist of liquid fuel and air to very high temperatures and pressures, which causes the diesel to spontaneously combust.  This causes a more powerful compression of the pistons, which produces greater engine torque (that is, more power).

90.     The diesel engine is able to do this both because it operates at a higher compression ratio than a gasoline engine and because diesel fuel contains more energy than gasoline.

91.     But this greater energy and fuel efficiency comes at a cost:  diesel produces dirtier and more dangerous emissions.  One by-product of diesel combustion is oxides of nitrogen (NOx), which include a variety of nitrogen and oxygen chemical compounds that only form at high temperatures.

92.     NOx is a generic term for the mono-nitrogen oxides NO and NO2 (nitric oxide and nitrogen dioxide), which are predominantly produced from the reaction of nitrogen and oxygen gases in the air during combustion.  NOx is produced by the burning of all fossil fuels, but is particularly difficult to control from the burning of diesel fuel. NOx is a toxic pollutant, which produces smog and a litany of environmental and health problems.  NOx pollution contributes to nitrogen dioxide, particulate matter in the air, and reacts with sunlight in the atmosphere to form ozone.  Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital.  Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects.  Children, the elderly, and people with pre-existing respiratory illness are at acute risk of health effects from these pollutants.

93.     Diesel fuel is traditionally denser than gasoline, and the syrupy fuel contains longer hydrocarbon chains, which tend to produce a more efficient vehicle.  In fact, diesel engines can convert over 45% of diesel's chemical energy into useful mechanical energy, whereas gasoline engines convert only 30% of gasoline's chemical energy into mechanical

energy.[1]  To make use of this dense diesel fuel, diesel engines combine high pressure to ignite a combination of diesel fuel and air through "compression ignition," as opposed to gasoline engines that typically use electric discharge from a spark plug to ignite a combination of gasoline and air through "spark ignition."  Though more efficient, diesel engines come with their own set of challenges, as emissions from diesel engines can include higher levels of NOx and particulate matter (PM) or soot than emissions from gasoline engines due to the different ways the different fuels combust and the different ways the resulting emissions are treated following combustion.  One way NOx emissions can be reduced is by adjusting the compression and temperature, but that in turn produces PM, a similarly-undesirable hydrocarbon-based emission.  Another way NOx emissions can be reduced is through exhaust gas recirculation or "EGR", whereby exhaust gases are routed back into the intake of the engine and mixed with fresh incoming air.  Exhaust gas recirculation lowers NOx by reducing the available oxygen and by reducing maximum combustion temperatures; however, EGR can also lead to an increase in PM as well.  Another way NOx emissions can be reduced is through expensive exhaust gas after-treatment devices, primarily, catalytic converters, that use a series of chemical reactions to transform the chemical composition of a vehicle's NOx emissions into less harmful, relatively inert, and triple bonded nitrogen gas (N2) and carbon dioxide (CO2).

94.    Diesel engines thus operate according to this trade-off between price, NOx, and PM, and for the EPA to designate a diesel car as a "clean" vehicle, it must produce both low PM and low NOx. In 2000, the EPA announced stricter emission standards requiring all diesel models starting in 2007 to produce drastically less NOx than years prior.

---

[1]    Jack Ewing, Volkswagen Engine-Rigging Scheme Said to Have Begun in 2008, N.Y. Times (Oct. 5, 2015), http://www.nytimes.com/20 IS/1 O/OS/business/ engine-shortfall-pushedvolkswagen-to-evade-emissions-testing.html.

95.     But it was of utmost importance for Mercedes to achieve (or at least appear to achieve) this "impossible" goal, for it could not legally sell a single vehicle that failed to comply with the governmental emission regulations.  Before introducing a Class Vehicle into the U.S. stream of commerce (or causing the same), Mercedes was required to first apply for, and obtain, an EPA-administered COC, certifying that the vehicle comported with the emission standards for pollutants enumerated in 40 C.F.R. §§ 86.1811-04, 86.1811-09, and 86.1811-10.  The CAA expressly prohibits automakers, like Mercedes, from introducing a new vehicle into the stream of commerce without a valid EPA COC.  *See* 42 U.S.C. § 7522(a)(1).  Moreover, vehicles must be accurately described in the COC application "in all material respects" to be deemed covered by a valid COC.  *See* 40 C.F.R. §§ 86.1848-10(c)(6).  California's emission standards are even more stringent than those of the EPA.  California's regulator, CARB, requires a similar application from automakers to obtain an EO, confirming compliance with California's emission regulations, before allowing the vehicle onto California's roads.

**B.     The BlueTEC Technology**

96.     Car manufacturers have struggled to produce diesel engines that have high power and strong fuel efficiency but also cleaner emissions.  Removing NOx from the untreated exhaust is difficult, and diesel car makers have reacted by trying to remove NOx from the car's exhaust using catalysts.

97.     Mercedes' response to the challenge has been the BlueTEC diesel engine.

98.     In order to successfully grow the U.S. diesel market and meet its ambitious objectives, it was critical that Mercedes develop the technology to maintain the efficient, powerful performance of a diesel, while drastically reducing NOx emissions to comply with the CAA and state emission standards.

99.     This high-stakes engineering dilemma led to a deep divide within the company, as two divergent exhaust gas after-treatment technical approaches emerged.  One approach involved a selective catalytic reduction (SCR) system that proved to be effective but expensive.  The other, which utilized a lean NOx trap, was significantly cheaper but was less effective and resulted in lower fuel efficiency.

100.    A SCR System is depicted below:



101.    In 2006, Wolfgang Bernhard, then a top executive at VW AG (and former Daimler executive), advocated for the SCR system and championed a technology-sharing agreement with Mercedes-Benz and BMW to jointly develop a SCR emission control system utilizing urea—a post-combustion emission reductant generically referred to as "Diesel Exhaust Fluid" or "DEF" and marketed as "AdBlue" by Mercedes, Volkswagen, and other German vehicle manufacturers that, when injected into the exhaust stream in a catalyst chamber, converts NOx into nitrogen gas, water, and carbon dioxide.  This SCR system was expensive, costing

$350 per vehicle, and came with other compromises, including, primarily, the need for installation of a DEF tank that would require regular refills.

102.    After the by-products of combustion leave the engine, some of the exhaust is cooled and returned to the combustion chamber using exhaust gas recirculation (EGR).  This is the first step in reducing engine-out NOx.  After passing through a particulate filter, the BlueTEC technology injects ammonia-rich urea into the exhaust in order to convert NOx into less harmful substances, such as nitrogen and oxygen.

103.    The BlueTEC approach, when it is operational, results in cleaner emissions.

**C.    Mercedes Advertised and Promoted BlueTEC as the World's Cleanest Diesel Engine.**

104.    Mercedes customers expect "exceptional environmental sustainability."[2]  In a 2008 press release, Mercedes acknowledged that "the environmental sustainability of vehicles is gaining importance in the purchasing decision."[3]

105.    To induce consumers to purchase BlueTEC vehicles, Mercedes marketed the BlueTEC-equipped vehicles as environmentally friendly and fuel efficient "without the need to forego the characteristic brand features—safety, comfort and refined driving pleasure."[4]

---

[2]    Press Release, Mercedes-Benz, Mercedes-Benz launches "Formula Green" in the five, four and three-litre consumption class, *available at* http://media.daimler.com/dcmedia/0-921-658901-1-1277592-1-0-0-0-0-1-0-0-0-1-0-0-0-0-0.html.

[3]    Press Release, Mercedes-Benz, Road to the Future: From BlueTEC Diesel Vehicles to Electric Vehicles: Modular Technologies for a Clean Future of the Premium Automobile, *available at*, http://media.daimler.com/ dcmedia/0-921-657591-1-1091617-1-0-1-0-0-1-12639-0-0-1-0-0-0-0-0.html?TS=1459448202325.

[4]    Press Release, Mercedes-Benz, Road to the Future: From BlueTEC Diesel Vehicles to Electric Vehicles: Modular Technologies for a Clean Future of the Premium Automobile, *available at*, http://media.daimler.com/ dcmedia/0-921-657591-1-1091617-1-0-1-0-0-1-12639-0-0-1-0-0-0-0-0.html?TS=1459448202325.

106.    Mercedes advertising is widely disseminated throughout the United States.   It includes, among other things, televised advertisements, online social media campaigns, press releases and public statements (claiming BlueTEC vehicles comply with EPA emissions standards), print advertising, brochures and other materials distributed to dealers and distributors, and strategic product placement (for instance, a Mercedes fleet of "low-emission" vehicles, including the E320 BlueTEC, shuttled superstar musicians at each of the eight 2007 Live Earth climate protection concerts, two of which took place in the United States[5]).

**1.      Mercedes advertised and promoted BlueTEC as low-emitting.**

107.    Mercedes' advertisements, promotional campaigns, and public statements represented that the Affected Vehicles had low emissions, reduced NOx by 90%, had lower emissions than comparable diesel vehicles, and had lower emissions than other comparable vehicles.  For example:

a.      According to Mercedes, it offers consumers "the world's cleanest diesel automobiles."[6]

b.      Mercedes promises that BlueTEC Clean Diesel vehicles have "ultra-low emissions," [7] with "up to 30% lower greenhouse-gas emissions than gasoline."

c.      On its website, Mercedes depicts a BlueTEC SUV driving next to a shoreline with ebullient waves under a clear-blue sky.  In a faded-blue portion in the

---

[5]      Press Release, Mercedes-Benz, Phil Collins, Jon Bon Jovi, Snoop Dogg and the Black Eyed Peas Join Smart to Protect the Environment, *available at* http://media.daimler.com/dcmedia/0-921-1653632-1-893475-1-0-0-0-0-1-0-0-0-1-0-0-0-0-0.html.

[6]      Press Release, Mercedes-Benz, Phil Collins, Jon Bon Jovi, Snoop Dogg and the Black Eyed Peas Join Smart to Protect the Environment, *available at* http://media.daimler.com/dcmedia/0-921-1653632-1-893475-1-0-0-0-0-1-0-0-0-1-0-0-0-0-0.html.

[7]      E.g., 2011 GL Class Brochure, p.5 ("Advanced BlueTEC technology starts with cleaner combustion of its diesel fuel, and finishes with certified Ultra Low Emissions, even in the most stringent U.S. states.").

vehicles' path, Mercedes asks consumers to "imagine a fuel that produces fewer greenhouse gases than gasoline."[8]

d.    Mercedes claims that BlueTEC produces up to 90% fewer emissions than equivalent gas-powered vehicles,[9] and converts nitrous oxide emissions into "pure, earth-friendly nitrogen and water."[10]

e.    In a technical explanation of BlueTEC on its website, Mercedes tells consumers that it "reduces Nitrogen Oxides by up to 80%"[11]

f.    Mercedes proclaims itself "#1 in CO2 emissions for luxury vehicles."[12]

g.    One Mercedes BlueTEC advertisement depicts two rear mufflers side-by-side in the shape of human lungs.  The caption underneath claims that BlueTEC is "For the air we breathe."



BlueTEC. The cleanest diesel technology in the world. For the air we breathe.    Mercedes-Benz [13]

---

[8]    *BlueTEC Clean Diesel*, https://www.mbusa.com/mercedes/benz/green/diesel_bluetec (last visited March 29, 2016).

[9]    E.g., 2016 Sprinter Van Brochure, p.2.

[10]    E.g., 2011 M-Class Brochure, p.5.

[11]    How Mercedes-Benz BlueTEC Works—Clean Diesel Technology, Mercedes-Benz Official YouTube Channel, https://youtu.be/w4T5B_UmgJo.

[12]    *BlueTEC Clean Diesel*, https://www.mbusa.com/mercedes/benz/green/diesel_bluetec (last visited March 29, 2016).

2.      **Mercedes advertised and promoted BlueTEC as environmentally friendly.**

108.    Mercedes holds itself out as a protector of the environment:  "Long before it became front-page news, Mercedes-Benz has been innovating and implementing new ways to help minimize the impact of cars and trucks on the world we share.  It's a promise that's been kept for generations, and not just with cleaner, more efficient power under the hood."[14]  Indeed, the company relishes its message that it plays an industry leading role in advancing "green" technologies like BlueTEC.

109.    BlueTEC is part of a line-up of Mercedes technologies that it says are "green."[15] Mercedes widely disseminates advertisements, promotional campaigns, and public statements throughout the United States to induce the purchase of BlueTEC vehicles by customers that are concerned about the environment.  For example:

a.      Mercedes calls its BlueTEC engine, "[e]arth-friendly, around the world."[16]

b.      A promotional video created for Mercedes in 2009 opens with the camera pointing up to the sky with rays of sun coming through clouds.  "The Earth," says the narrator "is changing."  He then tells us that Mercedes-Benz BlueTEC is "cleaner . . . and—with a revolutionary system which significantly reduces greenhouse gases and smog-forming pollutants—more respectful of the earth."[17]

---

[13]     Advertisement created by Jung von Matt, Swiss creative agency, *available at* http://www.jvm.ch/en/arbeiten /kampagne/mercedes-benz/bluetec-1/print.

[14]     *Mercedes-Benz & The Environment*, https://www.mbusa.com/mercedes/benz/green#main (last visited March 31, 2016).

[15]     *Mercedes-Benz & The Environment*, https://www.mbusa.com/mercedes/benz/green#main (last visited March 31, 2016).

[16]     *BlueTEC Clean Diesel*, https://www.mbusa.com/mercedes/benz/green/diesel_bluetec (last visited March 29, 2016).

[17]     Studio    Dialog,    Video    for    Mercedes-Benz    BlueTEC,    *available    at* https://vimeo.com/8989688.

  c.  A technical description of BlueTEC available on the Mercedes-Benz website closes with, "BlueTEC—the world's cleanest diesel engines. Environmentally-friendly technology, without sacrificing performance or driving pleasure."[18]

  d.  Mercedes claims in a brochure for the 2016 Sprinter that "Thanks to BlueTEC clean-diesel technology, the Sprinter is one of the greenest vans in the land."[19]

  e.  Mercedes strategically placed its BlueTEC vehicles among a fleet of Mercedes-Benz vehicles that shuttled superstar musicians like Bon Jovi, Snoop Dogg, The Police, Kanye West and others at the 2007 Live Earth climate protection concerts.  Live Earth attendees were asked to pledge that they would take personal action to solve the climate crises and "buy from businesses . . . who share my commitment to solving the climate crises."[20]

  f.  A 2009 website designed for Mercedes-Benz pictured a 2009 ML320 BlueTEC driving in the sky through clouds, with the title, "Why you should go BLUE if you want to go green."[21]  The site promised consumers, "an environmentally-smart solution that doesn't demand sacrifices."  On information and belief, this design was disseminated to U.S. consumers by Mercedes-Benz U.S. via its website on or around 2009.

**3.  Mercedes advertised and promoted BlueTEC as meeting and exceeding compliance with U.S. emissions standards in all 50 states.**

110.  Mercedes expressly markets the Affected Vehicles as Clean Diesel vehicles, with registration approvals in all 50 states.  For example:

  a.  Mercedes' website proudly presents "BlueTEC: . . . now available in five different Mercedes-Benz BlueTEC models in all 50 states."[22]

---

[18] How Mercedes-Benz BlueTEC Works—Clean Diesel Technology, Mercedes-Benz Official YouTube Channel, https://youtu.be/w4T5B_UmgJo.

[19] 2016 Sprinter Van Brochure, p.2.

[20] *Gore Urges "7 Point Pledge" Ahead of Live Earth*, Associated Press, June 29, 2007, *available at* http://www. nbcnews.com/id/19502465/ns/us_news-environment/t/gore-urges-point-pledge-ahead-live-earth/#.

[21] Portfolio of Chris Lacey, Mercedes-Benz BlueTEC, http://www.chrislacey.net/354/uncategorized/mercedes-benz-bluetec.

[22] *Mercedes-Benz & The Environment*, http://www.mbusa.com/mercedes/benz/green#module-2 (last visited March 31, 2016).

b.     A June 2008 press release boasts that Mercedes-Benz was the first manufacturer in the world to achieve registration approval in all 50 states for Diesel SUVs.[23]

c.     In an April 2009 interview about the Mercedes-Benz E-Class, Professor Dr. Herbert Kohler, Chief Environmental Officer at Daimler AG, claims that Mercedes-Benz "goes beyond statutory requirements," because "sustainable mobility means more than the mere fulfilment of rigid environmental guidelines."[24]

**D.    The Mercedes Deception**

111.    In the wake of a major scandal involving Volkswagen and Audi diesel vehicles evading emissions standards with the help of certain software that manipulates emissions controls (called "defeat devices"),[25] scientific literature and reports indicate that Mercedes' so called Clean Diesel vehicles emit far more pollution on the road than in lab tests.  The EPA has widened its probe of auto emissions to include, for example, the Mercedes E250 BlueTEC.

112.    As first reported in a February 2016 issue of German language magazine *Der Spiegel*, Mercedes has ***admitted*** that a shut-off device in the engine management of its C-Class diesel cars stops NOx cleaning when ambient temperatures drop below 50 degrees Fahrenheit

---

[23]    Press Release, Mercedes-Benz, Road to the Future: From BlueTEC Diesel Vehicles to Electric Vehicles: Modular Technologies for a Clean Future of the Premium Automobile, *available at*, http://media.daimler.com/ dcmedia/0-921-657591-1-1091617-1-0-1-0-0-1-12639-0-0-1-0-0-0-0-0.html?TS=1459448202325.

[24]    Life Cycle, Environmental Certificate for the E-Class, p.6 (April 2009).

[25]    The EPA's Notice of Violation ("NOV") to Volkswagen Group of America, Inc. can be found at: *http://www3.epa.gov/otaq/cert/documents/vw-nov-caa-09-18-15.pdf*.  As detailed in the EPA's Notice of Violation ("NOV"), software in Volkswagen and Audi diesel vehicles detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test.  But otherwise, while the vehicle is running, the emissions controls are suppressed.  This results in cars that meet emissions standards in the laboratory or state testing station, but during normal operation emit NOx at up to 40 times the standard allowed under United States laws and regulations.  Volkswagen has admitted to installing a defeat device in its diesel vehicles.

and in other, unspecified circumstances.  Mercedes asserts, without providing details, that the shut-off is done to protect the engine.

113.    So, while the Mercedes diesels with the BlueTEC engine are designed to pass official emissions tests, which are usually conducted at a temperature exceeding 50 degrees, the vehicles nonetheless emit far more pollution than government emissions standards in the United States permit when the temperature drops below 50 degrees.

114.    This puts the lie to Mercedes' claims that BlueTEC is "the world's cleanest diesel passenger vehicle" with "ultralow emissions:"   Mercedes misrepresents the emissions performance of its vehicles equipped with BlueTEC engines because, when the temperature falls below 50 degrees, the Affected Vehicles spew unmitigated NOx into the air.

115.    Mercedes never disclosed to consumers that Mercedes diesels with BlueTEC engines may be "clean" diesels when it is warm, but are "dirty" diesels when it is not.  Mercedes never disclosed that, when the temperature drops below 50 degrees, it prioritizes engine power and profits over people.

116.    A study conducted by TNO for the Dutch Ministry of Infrastructure and the Environment confirms that, in real world testing, the Mercedes C-Class 220 emits NOx at levels much higher than in controlled dynamometer tests and much higher than the "Euro 6 standard," which is less stringent than the U.S. standard.  More specifically, the May 2015 TNO Report found that post-selective catalytic reduction (SCR) tailpipe NOx emissions ranged from 250 to 2000 mg/km; for reference, the Euro 6 max, which is less stringent than U.S. standards, is 80 mg/km.   "Overall the NOx real-world emissions of [the C-Class 220] are relatively high, especially during the very short trips . . . and trips at high speeds."  *See* TNO Report at 34. Furthermore, the "results show clearly that different control strategies of the engine are applied

in chassis dynamometer tests and on the road." *Id*., Appendix B, page 3.  In other words, the vehicle emitted significantly more NOx on real-world test trips on the road than during a type approval test in the laboratory.

117.   TNO added:  "In chassis dynamometer tests the engine out NOx emissions are 100 to 450 mg/km, indicating an effective EGR [exhaust gas recirculation] system which reduces NOx emissions in certain chassis dynamometer tests.  In real-world tests the EGR system seems to be less effective or not effective at all, as engine out NOx emissions in real-world tests range from 450 to as much as 2250 mg/km."  TNO Report at 34.  The fact that Mercedes passed the dynamometer test in all tests, but failed the real world test, is suggestive that like VW, Mercedes is implementing a "defeat device."

118.   TNO also found that the tank holding the AdBlue in the Mercedes C-Class 220 was too small to hold the amount of AdBlue catalyst necessary to reduce NOx emissions below regulatory limits for the advertised service interval (22,000 km).  The tank size is 25 liters, and TNO found that a 45.8 liter tank would be necessary to meet the Euro 6 80 mg/km NOx emission level—a level that is less stringent than U.S. limits.  TNO Report at 45.

119.   TNO further remarked:  "It is remarkable that the NOx emission under real-world conditions exceeds the type approval value by [so much].  It demonstrates that the settings of the engine, the EGR and the SCR during a real-world test trip are such that they do not result in low NOx emissions in practice.  In other words: ***In most circumstances arising in normal situations on the road, the systems scarcely succeed in any effective reduction of NOx emissions***."  TNO Report at 6 (emphasis added).  The lack of any "effective reduction of NOx emissions" is a complete contradiction of Mercedes' claim that its vehicles are "Earth Friendly," produce

"harmless nitrogen and oxygen," "Reduces Nitrogen Oxides by 80%," is "For the air we breathe," or "significantly reduces greenhouse gases."

120.    Other organizations are beginning to take notice of the Mercedes deception.  The Transportation and Environment (T&E) organization, a European group aimed at promoting sustainable transportation, compiled data from "respected testing authorities around Europe" that show Mercedes might sell cars that produce illegal levels of tailpipe emissions.  T&E stated in September 2015 that real-world emissions testing showed drastic differences from laboratory tests such that the Mercedes models tested emitted 50% more pollutants such as $CO_2$ on the road than in their laboratory tests.  "For virtually every new model that comes onto the market the gap between test and real-world performance leaps," the report asserts.

121.    Furthermore, it was reported in October 2015 that certain diesel models sold by Mercedes in Europe (including the C 220 BlueTEC and the GLA 200 d) were found to emit 2 to 3 times higher levels of NOx pollution when tested in more realistic driving conditions, according to new research data compiled by ADAC, Europe's largest motoring organization. The new testing results are based on a U.N.-developed test called "WLTC."

122.    Worse still, according to on-road testing in Europe by Emissions Analytics, publicized on October 9, 2015, Mercedes' diesel cars produced an average of 0.406g/km of NOx on the road, 5 times higher than the Euro 6 level permits—and more than 13 times higher than the U.S. level permits (.03g/km).

123.    Emissions Analytics is a U.K. company, which says that it was formed to "overcome the challenge of finding accurate fuel consumption and emissions figures for road vehicles."  With regard to its recent on-road emissions testing, the company explains:  "[I]n the European market, we have found that real-world emissions of the regulated nitrogen oxides are

- 43 -

four times above the official level, determined in the laboratory.  Real-world emissions of carbon

dioxide are almost one-third above that suggested by official figures.  For car buyers, this means

that fuel economy on average is one quarter worse than advertised.  This matters, even if no

illegal activity is found."

124.  The German Environmental Aid organization (DUH) recently called for

emergency action to ban the C220 from city centers in Germany when the temperature drops

below  10  degrees  Celsius/50  degrees  Fahrenheit.  *See*

https://translate.google.com/translate?hl=en&sl=de&u=http://www.duh.de/pressemitteilung.html

%3F%26tx_ttnews%255Btt_news%255D%3D3726&prev=search.

125.  In response to the current diesel emissions controversy, Mercedes' parent

company, Daimler AG, has issued a statement claiming:  "We categorically deny the accusation

of manipulating emission tests regarding our vehicles.  A defeat device, a function which

illegitimately reduces emissions during testing, has never been and will never be used at

Daimler.  This holds true for both diesel and petrol engines.  Our engines meet and adhere to

every legal requirement.  . . . [W]e can confirm that none of the allegations apply to our vehicles.

The technical programming of our engines adheres to all legal requirements."

126.  A spokesman for Mercedes evaded the ramifications of the findings that

Mercedes diesel cars violate emissions standards, saying only:  "Since real-world driving

conditions do not generally reflect those in the laboratory, the consumption figures may differ

from the standardized figures."  Notably, Mercedes and its parent company have not actually

denied that their diesel cars violate emissions standards.

127.     These denials are misleading at best.  Real world testing of the Mercedes' engine reveals that it routinely emits NOx that exceed U.S. and state emission levels and these levels far exceed any notion that these vehicles are clean.

128.     Plaintiffs' testing of a Mercedes BlueTEC vehicle at highway speeds, using a Portable Emissions Measurement System, reveals that the average highway emissions were found to be at 320 mg/mile or about 4.5 times the highway standard.  In some instances, at 60 mph, emissions were found to be as high as 432 mg/mile or 6.1 times the highway standard.

129.     Additional testing was conducted below 50 degree F (10 deg C).  NOx emissions were found to range from 1.3 to 6.3 times higher than tests conducted at temperatures above 50 degree F.  That translates to NOx emissions 8.1 to 19.7 times the highway standard in cold weather.

130.     Testing was also performed under variable speed and stop-and-go driving conditions.  A total of 325 miles of data was accumulated with average speeds ranging from 14.6 to 43.9 mph.  On-road conditions of this type are best represented by the FTP-75 standard of 0.050 g/mile NOx.  In no instances of the 18 tests conducted did measured emissions fall below the FTP standard.  Weighting the emissions by the distance traveled for each trip, the average variable speed emissions of the vehicle were found to be 249 mg/mile, or about 5 times the FTP standard. In several instances, emissions were found to be as high as 500 to 631 mg/mile, or 10 to 12.6 times the FTP standard.

131.     Additional variable-speed testing was conducted below 50 degree F (10 deg C).  NOx emissions were found to be as much as 7.3 times higher than tests conducted at temperatures above 50 degree F.  That translates to NOx emissions as much as 30.8 times the standard.

132.    In addition, tests were conducted for driving conditions where there is no emissions standard.  In testing done on mountain conditions, NOx emissions were 579 mg/mile, hardly "Earth Friendly."  Even in downhill driving, NOx emissions were high.

133.    The U.S. Clean Air Act has strict emissions standards for vehicles, and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution.  Every vehicle sold in the United States must be covered by an EPA issued certificate of conformity.  Accordingly, Mercedes has certified to the EPA that the Mercedes BlueTEC Clean Diesel vehicles sold in the United States meet applicable federal emissions standards.  Nevertheless, by manufacturing and selling BlueTEC cars that emit far more pollutants than permitted under EPA standards, and that emit far more pollutants on the road than in laboratory tests, Mercedes violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal law.

134.    On information and belief, Plaintiffs allege that the following Mercedes diesel models are affected by the unlawful, unfair, deceptive, and otherwise defective emission controls (the "Affected Vehicles"):  ML 320, ML 350, GL 320, E320, S350, R320, E Class, GL Class, ML Class, R Class, S Class, GLK Class, GLE Class, and Sprinter.  Discovery may reveal that additional vehicle models and model years are properly included as Affected Vehicles.

E.    **The Damage**

135.    NOx contributes to ground-level ozone and fine particulate matter.  According to the EPA, "Exposure to these pollutants has been linked with a range of serious health effects, including increased asthma attacks and other respiratory illnesses that can be serious enough to send people to the hospital.  Exposure to ozone and particulate matter have also been associated with premature death due to respiratory-related or cardiovascular-related effects.  Children, the

elderly, and people with pre-existing respiratory disease are particularly at risk for health effects of these pollutants."

136.    Mercedes will not be able to make the Affected Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their efficiency.  As a result, even if Mercedes is able to make Class members' Affected Vehicles EPA compliant, Class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised.  This will necessarily result in a diminution in value of every Affected Vehicle, and it will cause owners of Affected Vehicles to pay more for fuel while using their affected vehicles.

137.    As a result of Mercedes' unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Affected Vehicles are not "clean" diesels and emit more pollutants than permitted under federal and state laws, owners and/or lessees of the Affected Vehicles have suffered losses in money and/or property.  Had Plaintiffs and Class members known of the higher emissions at the time they purchased or leased their Affected Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.  Moreover, when and if Mercedes recalls the Affected Vehicles and degrades the BlueTEC Clean Diesel engine performance in order to make the Affected Vehicles compliant with EPA standards, Plaintiffs and Class members will be required to spend additional sums on fuel and will not obtain the performance characteristics of their vehicles when purchased.  Moreover, Affected Vehicles will necessarily be worth less in the marketplace because of their decrease in performance and efficiency and increased wear on their cars' engines.

## VI.   TOLLING OF THE STATUTE OF LIMITATIONS

### A.   Discovery Rule Tolling

138.   Class Members had no way of knowing about Mercedes' deception with respect to the unlawfully high emissions of its BlueTEC Clean Diesel engine system in Affected Vehicles.  To be sure, Mercedes continues to market the Affected Vehicles as "clean" diesels and also continues to claim that Affected Vehicles comply with EPA emissions standards.

139.   Within the time period of any applicable statutes of limitation, Plaintiffs and members of the proposed classes could not have discovered through the exercise of reasonable diligence that Mercedes was concealing the conduct complained of herein and misrepresenting the Company's true position with respect to the emission qualities of the Affected Vehicles.

140.   Plaintiffs and the other Class Members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Mercedes did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Mercedes had concealed information about the true emissions of the Affected Vehicles, which was discovered by Plaintiffs only shortly before this action was filed.  Nor in any event would such an investigation on the part of Plaintiffs and other Class members have disclosed that Mercedes valued profits over truthful marketing and compliance with federal and state law.

141.   For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to the Affected Vehicles.

### B.   Fraudulent Concealment Tolling

142.   All applicable statutes of limitation have also been tolled by Mercedes' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

143.    Instead of disclosing its emissions scheme, or that the quality and quantity of emissions from the Affected Vehicles were far worse than represented, and of its disregard of federal and state law, Mercedes falsely represented that the Affected Vehicles complied with federal and state emissions standards, that the diesel engines were "Clean," and that it was a reputable manufacturer whose representations could be trusted.

## C.    Estoppel

144.    Mercedes was under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of emissions from the Affected Vehicles, and of those vehicles' emissions systems, and of the compliance of those systems with applicable federal and state law.

145.    Mercedes knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature, quality, and character of the emissions systems, and the emissions, of the Affected Vehicles.

146.    Mercedes was also under a continuous duty to disclose to Plaintiffs and Class members that it had engaged in the conduct complained of herein contrary to federal and state emissions and clean air standards, and that it systematically devalued compliance with federal and state law regulating vehicle emissions and clean air.

147.    Based on the foregoing, Mercedes is estopped from relying on any statutes of limitations in defense of this action.

## VII.   CLASS ALLEGATIONS

148.    Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class and subclasses (collectively, the "Classes"):

**The Nationwide Class**

All persons or entities in the United States who owned and or leased an "Affected Vehicle" as of February 18, 2016. Affected Vehicles include, without limitation, the diesel-powered: ML 320, ML 350, GL 320, E320, S350, R320, E Class, GL Class, ML Class, R Class, S Class, GLK Class, GLE Class, and Sprinter.

**The California Subclass**

All persons or entities in the state of California who owned and/or leased an Affected Vehicle as of February 18, 2016.

**The Colorado Subclass**

All persons or entities in the state of Colorado who owned and/or leased an Affected Vehicle as of February 18, 2016.

**The Florida Subclass**

All persons or entities in the state of Florida who owned and/or leased an Affected Vehicle as of February 18, 2016.

**The Georgia Subclass**

All persons or entities in the state of Georgia who owned and/or leased an Affected Vehicle as of February 18, 2016.

**The Illinois Subclass**

All persons or entities in the state of Illinois who owned and/or leased an Affected Vehicle as of February 18, 2016.

**The Iowa Subclass**

All persons or entities in the state of Iowa who owned and/or leased an Affected Vehicle as of February 18, 2016.

**The Michigan Subclass**

All persons or entities in the state of Michigan who owned and/or leased an Affected Vehicle as of February 18, 2016.

**The Minnesota Subclass**

All persons or entities in the state of Minnesota who owned and/or leased an Affected Vehicle as of February 18, 2016.

**The New Jersey Subclass**

All persons or entities in the state of New Jersey who owned and/or leased an Affected Vehicle as of February 18, 2016.

**The New York Subclass**

All persons or entities in the state of New York who owned and/or leased an Affected Vehicle as of February 18, 2016.

**The Ohio Subclass**

All persons or entities in the state of Ohio who owned and/or leased an Affected Vehicle as of February 18, 2016.

**The Washington Subclass**

All persons or entities in the state of Washington who owned and/or leased an Affected Vehicle as of February 18, 2016.

**The Wisconsin Subclass**

All persons or entities in the state of Wisconsin who owned and/or leased an Affected Vehicle as of February 18, 2016.

149.    Excluded from the Class are individuals who have personal injury claims resulting from the unlawfully high emissions in the BlueTEC Clean Diesel system of Affected Vehicles.  Also excluded from the Class are Mercedes and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the Judge to whom this case is assigned and his/her immediate family.  Plaintiff reserves the right to revise the Class definition based upon information learned through discovery.

150.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

151.    This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

152.    **Numerosity**.  Federal Rule of Civil Procedure 23(a)(1):  The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class

members is impracticable.   While Plaintiffs are informed and believe that there are at least thousands of members of the Class, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from Mercedes' books and records.   Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

153.   **Commonality and Predominance**: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3):  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a)      Whether Mercedes engaged in the conduct alleged herein;

b)      Whether Mercedes designed, advertised, marketed, distributed, leased, sold, or otherwise placed Affected Vehicles into the stream of commerce in the United States;

c)      Whether the BlueTEC Clean Diesel engine system in the Affected Vehicles emit pollutants at levels that do not make them "clean" diesels and that do not comply with U.S. EPA requirements;

d)      Whether the BlueTEC Clean Diesel engine systems in Affected Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Affected Vehicles;

e)      Whether Mercedes knew about the unlawfully high emissions and, if so, how long Mercedes has known;

f)      Whether Mercedes designed, manufactured, marketed, and distributed Affected Vehicles with defective or otherwise inadequate emission controls;

g)      Whether Mercedes' conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

h)      Whether Plaintiffs and the other Class members overpaid for their Affected Vehicles;

i)      Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

j)      Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

154.    **Typicality**:  Federal Rule of Civil Procedure 23(a)(3):  Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Mercedes' wrongful conduct as described above.

155.    **Adequacy**:  Federal Rule of Civil Procedure 23(a)(4):  Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously.  The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

156.    **Declaratory and Injunctive Relief**:  Federal Rule of Civil Procedure 23(b)(2): Mercedes has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to each Class as a whole.

157.    **Superiority**:  Federal Rule of Civil Procedure 23(b)(3):  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no

unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Mercedes, so it would be impracticable for the members of the Classes to individually seek redress for Mercedes' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**A.    Claims Brought on Behalf of the Nationwide Class and the New Jersey Subclass Under New Jersey Law**

**COUNT I**
**VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT**
**(N.J.S.A.. §§ 56:8-1, *ET SEQ.*)**

158.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

159.    Plaintiffs bring this Count on behalf of the Nationwide Class and New Jersey Subclass.

160.    The New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq*. ("NJ CFA"), prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

161.    In the course of Mercedes' business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above. Accordingly, Mercedes engaged in unfair and

deceptive trade practices, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.  Further, Mercedes' acts and practices described herein offend established public policy because the harm they cause to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and because Mercedes fraudulently concealed the defective nature of the Affected Vehicles from consumers.

162.   Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

163.   Mercedes' conduct proximately caused injuries to Plaintiffs and the other Class and Subclass members.

164.   Plaintiffs and the other Class members were injured as a result of Mercedes' conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.   These injuries are the direct and natural consequence of Mercedes' misrepresentations and omissions.

165.   Pursuant to N.J.S.A. § 56:8-20, Plaintiffs will serve the New Jersey Attorney General with a copy of this Complaint.

## COUNT II
## BREACH OF CONTRACT
## (BASED ON NEW JERSEY LAW)

166.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

- 55 -

167.    Plaintiffs bring this Count on behalf of the Nationwide Class and New Jersey Subclass.

168.    Mercedes' misrepresentations and omissions alleged herein, including, but not limited to, Mercedes' failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.    Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective BlueTEC Clean Diesel engine system and which were not marketed as including such a system.    Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

169.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Mercedes and the purchaser or lessee.    Mercedes breached these contracts by, among other things, selling or leasing to Plaintiffs and the other New Jersey Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, including information known to Mercedes rendering each Affected Vehicle non-EPA-compliant, and thus less valuable, than vehicles not equipped with the defective BlueTEC Clean Diesel engine system.

170.    As a direct and proximate result of Mercedes' breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not

limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III
## FRAUDULENT CONCEALMENT

171.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

172.   Plaintiffs bring this Count on behalf of the Nationwide Class and New Jersey Subclass.

173.   Mercedes intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Mercedes acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

174.   Mercedes further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

175.   Mercedes knew these representations were false when made.

176.   The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, non-EPA-compliant and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

177.   Mercedes had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected

- 57 -

Vehicles were defective, non-EPA-compliant and unreliable in that they emitted unlawfully high levels of pollutants, because Plaintiffs and the other Class members relied on Mercedes' material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

178.    The aforementioned concealment was material because if it had been disclosed Plaintiffs and the other Class members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

179.    The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle.  Mercedes knew or recklessly disregarded that its representations were false because it knew that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.  Mercedes intentionally made the false statements in order to sell Affected Vehicles.

180.    Plaintiffs and the other Class members relied on Mercedes' reputation—along with Mercedes' failure to disclose the defective nature of the BlueTEC Clean Diesel engine system and Mercedes' affirmative assurance that its Affected Vehicles were reliable and reduced emissions vehicles, and other similar false representations—in purchasing or leasing Mercedes' Affected Vehicles.

181.    As a result of their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

182.    Mercedes' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other

Class members.  Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

**B.      Claims Brought on Behalf of the California Subclass**

<u>COUNT IV</u>
**FRAUD BY CONCEALMENT UNDER CALIFORNIA LAW**

183.    Plaintiff Catherine Roberts (Plaintiff, for purposes of all California Subclass Counts) incorporates by reference all paragraphs as though fully set forth herein.

184.    This claim is brought on behalf of the California Subclass.

185.    Mercedes designed, manufactured, marketed, sold, and/or leased Affected Vehicles to Plaintiff and the Subclass members.  Mercedes affirmatively misrepresented to Plaintiff and the Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles had no significant defects, complied with EPA and state emissions regulations, and would perform and operate properly when driven in normal usage.

186.    The Affected Vehicles purchased or leased by Plaintiff and the Subclass members were, in fact, defective, non-EPA-compliant, and unreliable, because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

187.    Mercedes intentionally concealed, suppressed, and failed to disclose the facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements.

188.    As alleged in this Complaint, at all relevant times, Mercedes has held out the Affected Vehicles to be EPA-compliant reduced emissions vehicles.  Mercedes disclosed certain details about the BlueTEC Clean Diesel engine, but nonetheless, Mercedes intentionally failed to

disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

189.    The truth about the defective emissions controls, unlawfully high emissions, and non-compliance with EPA emissions requirements was known only to Mercedes; Plaintiff and the Subclass members did not know of these facts and Mercedes actively concealed these facts from Plaintiff and Subclass members.

190.    Plaintiff and Subclass members reasonably relied upon Mercedes' deception. They had no way of knowing that Mercedes' representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Mercedes' deception on their own.   Rather, Mercedes intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicle emissions.

191.    Mercedes also concealed and suppressed material facts concerning what is evidently the true culture of Mercedes—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Mercedes because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing in cool weather.

192.    Mercedes' false representations were material to consumers, because they concerned the quality of the affected vehicles, because they concerned compliance with

applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Mercedes well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars with reduced emissions, and they paid accordingly.

193.   Mercedes had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Mercedes, because Mercedes had exclusive knowledge as to such facts, and because Mercedes knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Mercedes also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each country, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Mercedes had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their

vehicles must pass.  Mercedes represented to Plaintiff and Subclass members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective and unlawfully high emission vehicles.

194.    Mercedes actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Mercedes money, and it did so at the expense of Plaintiff and Subclass members.

195.    On information and belief, Mercedes has still not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of its referenced vehicles.

196.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by Mercedes, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Mercedes was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

197.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Mercedes' concealment of the true quality and quantity of those vehicles' emissions and Mercedes' failure to timely disclose the defect or defective design of the BlueTEC Clean Diesel

engine system, the actual emissions qualities and quantities of Mercedes-branded vehicles, and the serious issues engendered by Mercedes' corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiff and Subclass members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

198.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Mercedes' fraudulent concealment of the defective emissions controls of the Affected Vehicles, and of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the Mercedes brand name attached to Plaintiff's and Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

199.    Accordingly, Mercedes is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

200.    Mercedes' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Mercedes made to them, in order to enrich Mercedes.  Mercedes' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT V**
**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*)**

201.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

- 63 -

202.    This claim is brought on behalf of the California Subclass.

203.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

204.    Mercedes' conduct, as described herein, was and is in violation of the UCL. Mercedes' conduct violates the UCL in at least the following ways:

i.      By failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions;

ii.     By selling and leasing Affected Vehicles that suffer from a defective emissions control system and that emit unlawfully high levels of pollutants under normal driving conditions;

iii.    By knowingly and intentionally concealing from Plaintiff and the other Subclass members that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles suffer from a defective emissions control system and emit unlawfully high levels of pollutants under normal driving conditions;

iv.     By marketing Affected Vehicles as reduced emissions vehicles possessing functional and defect-free, EPA-compliant diesel engine systems;

v.      By deceptively obtaining EPA certification for Affected Vehicles;

vi.     By violating federal laws, including the Clean Air Act; and

vii.    By violating other California laws, including California consumer protection laws and California laws governing vehicle emissions and emission testing requirements.

205.    Mercedes' misrepresentations and omissions alleged herein caused Plaintiff and the other Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Subclass members would not have purchased or leased these vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive

alternative vehicles that did not contain defective BlueTEC Clean Diesel engine systems that failed to comply with EPA and California emissions standards.

206.     Accordingly, Plaintiff and the other Subclass members have suffered injury in fact, including lost money or property, as a result of Mercedes' misrepresentations and omissions.

207.     Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Mercedes under Cal. Bus. & Prof. Code § 17200.

208.     Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Mercedes from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and members of the Subclass any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief set forth below.

<u>COUNT VI</u>
**VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *ET SEQ.*)**

209.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

210.     This claim is brought on behalf of the California Subclass.

211.     California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

212.     The Affected Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

213.     Plaintiff and the other Subclass members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiff, the other Subclass members, and Mercedes are "persons" as defined in Cal. Civ. Code § 1761(c).

214. As alleged above, Mercedes made representations concerning the benefits, efficiency, performance and safety features of the BlueTEC Clean Diesel engine systems that were misleading.

215. In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Mercedes' failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were equipped with defective BlueTEC Clean Diesel engine systems that failed EPA and California emissions standards.

216. Mercedes' conduct, as described hereinabove, was and is in violation of the CLRA. Mercedes' conduct violates at least the following enumerated CLRA provisions:

    i.    Cal. Civ. Code § 1770(a)(2): Misrepresenting the approval or certification of goods.

    ii.    Cal. Civ. Code § 1770(a)(3): Misrepresenting the certification by another.

    iii.    Cal. Civ. Code § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have.

    iv.    Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another.

    v.    Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised.

    vi.    Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

217. Plaintiff and the other Subclass members have suffered injury in fact and actual damages resulting from Mercedes' material omissions and misrepresentations and sale of Affected Vehicles with defective emissions controls because they paid an inflated purchase or lease price for the Affected Vehicles and because they stand to pay additional fuel costs if and when their Affected Vehicles are made to comply with emissions standards.

218.    Mercedes knew, should have known, or was reckless in not knowing of the defective design and/or manufacture of the BlueTEC Clean Diesel engine systems, and that the Affected Vehicles were not suitable for their intended use.

219.    The facts concealed and omitted by Mercedes to Plaintiff and the other Subclass members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Affected Vehicles or pay a lower price.  Had Plaintiff and the other Subclass members known about the defective nature of the Affected Vehicles, and their non-compliance with EPA requirements, they would not have purchased or leased the Affected Vehicles or would not have paid the prices they paid.

220.    Plaintiff and the Subclass have provided Mercedes with notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a).  The notice was transmitted to Mercedes on March 28, 2016.

221.    Plaintiff's and the other Subclass members' injuries were proximately caused by Mercedes' unlawful and deceptive business practices.

222.    In accordance with Cal. Civ. Code § 1780(a), Plaintiff and members of the Subclass seek injunctive relief for Mercedes' violations of the CLRA.

223.    While Plaintiff and the Subclass do not seek to recover damages under the CLRA in this initial Complaint, after mailing appropriate notice and demand in accordance with Civil Code § 1782(a) & (d), Plaintiff will subsequently amend this Complaint to also include a request for compensatory and punitive damages.

## COUNT VII
### VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW
### (CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*)

224.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

225.    This claim is brought on behalf of the California Subclass.

226.    California Bus. & Prof. Code § 17500 states:   "It is unlawful for any …
corporation … with intent directly or indirectly to dispose of real or personal property … to
induce the public to enter into any obligation relating thereto, to make or disseminate or cause to
be made or disseminated … from this state before the public in any state, in any newspaper or
other publication, or any advertising device, … or in any other manner or means whatever,
including over the Internet, any statement … which is untrue or misleading, and which is known,
or which by the exercise of reasonable care should be known, to be untrue or misleading."

227.    Mercedes caused to be made or disseminated through California and the United
States, through advertising, marketing and other publications, statements that were untrue or
misleading, and which were known, or which by the exercise of reasonable care should have
been known to Mercedes, to be untrue and misleading to consumers, including Plaintiff and the
other Subclass members.

228.    Mercedes has violated § 17500 because the misrepresentations and omissions
regarding the functionality, reliability, environmental-friendliness, lawfulness, and safety of
Affected Vehicles as set forth in this Complaint were material and likely to deceive a reasonable
consumer.

229.    Plaintiff and the other Subclass members have suffered an injury in fact, including
the loss of money or property, as a result of Mercedes' unfair, unlawful, and/or deceptive
practices.   In purchasing or leasing their Affected Vehicles, Plaintiff and the other Subclass
members relied on the misrepresentations and/or omissions of Mercedes with respect to the
functionality, reliability, environmental-friendliness, lawfulness, and safety of the Affected
Vehicles.  Mercedes' representations turned out not to be true because the NOx reduction system
in the Affected Vehicles turns off or is limited during normal driving conditions and the Affected

Vehicles are distributed with BlueTEC Clean Diesel engine systems that include defective emissions controls. Had Plaintiff and the other Subclass members known this, they would not have purchased or leased their Affected Vehicles and/or paid as much for them. Accordingly, Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

230. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Mercedes' business. Mercedes' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

231. Plaintiff, individually and on behalf of the other Subclass members, requests that this Court enter such orders or judgments as may be necessary to enjoin Mercedes from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the other Subclass members any money Mercedes acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## COUNT VIII
### BREACH OF CONTRACT
### (BASED ON CALIFORNIA LAW)

232. Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

233. Plaintiff brings this Count on behalf of the California Subclass members.

234. Mercedes' misrepresentations and omissions alleged herein, including Mercedes' failure to disclose the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls as alleged herein, caused Plaintiff and the other Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected

Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective BlueTEC Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

235.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Mercedes and the purchaser or lessee.  Mercedes breached these contracts by selling or leasing to Plaintiff and the other Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls, including information known to Mercedes rendering each Affected Vehicle non-EPA-compliant, and thus less valuable, than vehicles not equipped with the defective BlueTEC Clean Diesel engine system.

236.    As a direct and proximate result of Mercedes' breach of contract, Plaintiff and the Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

C.    **Claims Brought on Behalf of the Colorado Subclass**

### COUNT IX
### VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT
### (COLO. REV. STAT. §§ 6-1-101, *ET SEQ.*)

237.    Plaintiff Keith Hall (Plaintiff, for purposes of all Colorado Subclass Counts) incorporates by reference all paragraphs as though fully set forth herein.

238.    Plaintiff brings this Count on behalf of the Colorado Subclass.

239.    Colorado's Consumer Protection Act (the "CCPA") prohibits a person from engaging in a "deceptive trade practice," which includes knowingly making "a false representation as to the source, sponsorship, approval, or certification of goods," or "a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods." COLO. REV. STAT. § 6-1-105(1)(b), (e).  The CCPA further prohibits "represent[ing] that goods … are of a particular standard, quality, or grade … if he knows or should know that they are of another," and "advertis[ing] goods … with intent not to sell them as advertised." COLO. REV. STAT. § 6-1-105(1)(g), (i).

240.    Defendant is a "person" under § 6-1-102(6) of the Colorado CPA, COL. REV. STAT. § 6-1-101, *et seq*.

241.    Plaintiff and Colorado Subclass members are "consumers" for the purpose of COL. REV. STAT. § 6-1-113(1)(a) who purchased or leased one or more Affected Vehicles.

242.    In the course of Mercedes' business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above. Accordingly, Mercedes engaged in unfair and deceptive trade practices, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.  Further, Mercedes' acts and practices described herein offend established public policy because the harm they cause to consumers, motorists, and

pedestrians outweighs any benefit associated with such practices, and because Mercedes fraudulently concealed the defective nature of the Affected Vehicles from consumers.

243.     In purchasing or leasing the Affected Vehicles, Plaintiff and the other Colorado Subclass members were deceived by Mercedes' failure to disclose the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

244.     Plaintiff and Colorado Subclass members reasonably relied upon Mercedes' false misrepresentations.  They had no way of knowing that Mercedes' representations were false and gravely misleading.  As alleged herein, Mercedes engaged in extremely sophisticated methods of deception.  Plaintiff and Colorado Subclass members did not, and could not, unravel Mercedes' deception on their own.

245.     Mercedes intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Colorado Subclass.

246.     Mercedes knew or should have known that its conduct violated the Colorado CPA.

247.     Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

248.     Mercedes' conduct proximately caused injuries to Plaintiff and the other Subclass members.

249.     Plaintiff and the other Subclass members were injured as a result of Mercedes' conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a

diminution in value. These injuries are the direct and natural consequence of Mercedes' misrepresentations and omissions.

250. Pursuant to Col. Rev. Stat. § 6-1-113, Plaintiff and the Subclass seek monetary relief against Mercedes measured as the greater of (a) actual damages in an amount to be determined at trial and the discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for Plaintiff and each Subclass member.

251. Plaintiff and the Subclass also seek an order enjoining Mercedes' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

**COUNT X**
**BREACH OF CONTRACT**
**(BASED ON COLORADO LAW)**

252. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

253. Plaintiff brings this Count on behalf of the Colorado Subclass members.

254. Mercedes' misrepresentations and omissions alleged herein, including Mercedes' failure to disclose the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls as alleged herein, caused Plaintiff and the other Subclass members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective BlueTEC Clean Diesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other

Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

255.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Mercedes and the purchaser or lessee.  Mercedes breached these contracts by selling or leasing to Plaintiff and the other Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls, including information known to Mercedes rendering each Affected Vehicle non-EPA-compliant, and thus less valuable, than vehicles not equipped with the defective BlueTEC Clean Diesel engine system.

256.    As a direct and proximate result of Mercedes' breach of contract, Plaintiff and the Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT XI
## FRAUDULENT CONCEALMENT
## (BASED ON COLORADO LAW)

257.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

258.    Plaintiff brings this Count on behalf of the Colorado Subclass.

259.    Mercedes designed, manufactured, marketed, sold, and/or leased Affected Vehicles to Plaintiff and the Subclass members.  Mercedes affirmatively misrepresented to Plaintiff and the Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles had no

significant defects, complied with EPA and state emissions regulations, and would perform and operate properly when driven in normal usage.

260.    The Affected Vehicles purchased or leased by Plaintiff and the Subclass members were, in fact, defective, non-EPA-compliant, and unreliable, because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

261.    Mercedes intentionally concealed, suppressed, and failed to disclose the facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements.

262.    As alleged in this Complaint, at all relevant times, Mercedes has held out the Affected Vehicles to be EPA-compliant reduced emissions vehicles.  Mercedes disclosed certain details about the BlueTEC Clean Diesel engine, but nonetheless, Mercedes intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

263.    The truth about the defective emissions controls, unlawfully high emissions, and non-compliance with EPA emissions requirements was known only to Mercedes; Plaintiff and the Subclass members did not know of these facts and Mercedes actively concealed these facts from Plaintiff and Subclass members.

264.    Plaintiff and Subclass members reasonably relied upon Mercedes' deception. They had no way of knowing that Mercedes' representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Mercedes' deception

on their own.   Rather, Mercedes intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicle emissions.

265.   Mercedes also concealed and suppressed material facts concerning what is evidently the true culture of Mercedes—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Mercedes because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing in cool weather.

266.   Mercedes' false representations were material to consumers, because they concerned the quality of the affected vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Mercedes well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars with reduced emissions, and they paid accordingly.

267.   Mercedes had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Mercedes, because Mercedes had exclusive knowledge as to such facts, and because Mercedes knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Mercedes also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with

respect to emissions standards, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each country, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Mercedes had the duty to disclose not just the partial truth, but the entire truth.   These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.   Whether a manufacturer's products pollute, comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Mercedes represented to Plaintiff and Subclass members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective and unlawfully high emission vehicles.

268.    Mercedes actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Mercedes money, and it did so at the expense of Plaintiff and Subclass members.

269.    On information and belief, Mercedes has still not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of its referenced vehicles.

270.     Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by Mercedes, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Mercedes was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

271.     Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Mercedes' concealment of the true quality and quantity of those vehicles' emissions and Mercedes' failure to timely disclose the defect or defective design of the BlueTEC Clean Diesel engine system, the actual emissions qualities and quantities of Mercedes-branded vehicles, and the serious issues engendered by Mercedes' corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiff and Subclass members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

272.     The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Mercedes' fraudulent concealment of the defective emissions controls of the Affected Vehicles, and of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the Mercedes

brand name attached to Plaintiff's and Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

273.    Accordingly, Mercedes is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

274.    Mercedes' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Mercedes made to them, in order to enrich Mercedes.  Mercedes' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**D.    Claims Brought on Behalf of the Florida Subclass**

**COUNT XII**
**VIOLATIONS OF THE FLORIDA DECEPTIVE & UNFAIR TRADE PRACTICES ACT**
**(FLA. STAT. §§ 501.201, *ET SEQ.*)**

275.    Plaintiff Flavio Moy ("Plaintiff," for purposes of all Florida Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

276.    Plaintiff brings this Count on behalf of the Florida Subclass.

277.    Plaintiffs are "consumers" within the meaning of Florida Unfair and Deceptive Trade Practices Act, FLA. STAT. § 501.203(7).

278.    Mercedes engaged in "trade or commerce" within the meaning of FLA. STAT. § 501.203(8).

279.    Florida's Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  FLA. STAT. § 501.204(1).  Mercedes participated in unfair and deceptive trade practices that violated the FUDTPA as described herein.

280.   In the course of Mercedes' business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-complaint with EPA emissions requirements as described above.  Accordingly, Mercedes engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in FLA. STAT. § 501.204(1), including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

281.   In the course of Mercedes' business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above. Accordingly, Mercedes engaged in unfair and deceptive trade practices, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.  Further, Mercedes' acts and practices described herein offend established public policy because the harm they cause to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and because Mercedes fraudulently concealed the defective nature of the Affected Vehicles from consumers.

282.    Mercedes intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Florida Subclass.

283.    Mercedes knew or should have known that its conduct violated the FUDTPA.

284.    Plaintiffs and the Florida Subclass suffered ascertainable loss caused by Mercedes' misrepresentations and its concealment of and failure to disclose material information.  Class members who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

285.    Mercedes had an ongoing duty to all its customers to refrain from unfair and deceptive acts or practices under the FUDTPA.  All owners of Affected Vehicles suffered ascertainable loss in the form of diminished value of their vehicles as a result of Mercedes' deceptive and unfair acts and practices made in the course of Mercedes' business.

286.    Mercedes' violations present a continuing risk to Plaintiffs as well as to the general public.  Mercedes' unlawful acts and practices complained of herein affect the public interest.

287.    As a direct and proximate result of Mercedes' violations of the FUDTPA, Plaintiffs and the Florida Subclass have suffered injury-in-fact and/or actual damage.

288.    Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

289.    Plaintiff and the other Subclass members were injured as a result of Mercedes' conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Mercedes' misrepresentations and omissions.

## COUNT XIII
## BREACH OF CONTRACT
## (BASED ON FLORIDA)

290.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

291.    Plaintiff brings this Count on behalf of the Florida Subclass members.

292.    Mercedes' misrepresentations and omissions alleged herein, including Mercedes' failure to disclose the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls as alleged herein, caused Plaintiff and the other Subclass members to make their purchases or leases of their Affected Vehicles.   Absent those misrepresentations and omissions, Plaintiff and the other Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective BlueTEC Clean Diesel engine system and which were not marketed as including such a system.   Accordingly, Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

293.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Mercedes and the purchaser or lessee.  Mercedes breached these contracts by selling or leasing to Plaintiff and the other Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls, including information known to Mercedes rendering each Affected Vehicle non-EPA-compliant, and thus less valuable, than vehicles not equipped with the defective BlueTEC Clean Diesel engine system.

294.     As a direct and proximate result of Mercedes' breach of contract, Plaintiff and the Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT XIV
## FRAUDULENT CONCEALMENT
## (BASED ON FLORIDA LAW)

295.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

296.     Plaintiff brings this Count on behalf of the Florida Subclass.

297.     Mercedes designed, manufactured, marketed, sold, and/or leased Affected Vehicles to Plaintiff and the Subclass members.  Mercedes affirmatively misrepresented to Plaintiff and the Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles had no significant defects, complied with EPA and state emissions regulations, and would perform and operate properly when driven in normal usage.

298.     The Affected Vehicles purchased or leased by Plaintiff and the Subclass members were, in fact, defective, non-EPA-compliant, and unreliable, because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

299.     Mercedes intentionally concealed, suppressed, and failed to disclose the facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements.

300.     As alleged in this Complaint, at all relevant times, Mercedes has held out the Affected Vehicles to be EPA-compliant reduced emissions vehicles.  Mercedes disclosed certain

details about the BlueTEC Clean Diesel engine, but nonetheless, Mercedes intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

301.    The truth about the defective emissions controls, unlawfully high emissions, and non-compliance with EPA emissions requirements was known only to Mercedes; Plaintiff and the Subclass members did not know of these facts and Mercedes actively concealed these facts from Plaintiff and Subclass members.

302.    Plaintiff and Subclass members reasonably relied upon Mercedes' deception. They had no way of knowing that Mercedes' representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Mercedes' deception on their own.  Rather, Mercedes intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicle emissions.

303.    Mercedes also concealed and suppressed material facts concerning what is evidently the true culture of Mercedes—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Mercedes because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing in cool weather.

304.   Mercedes' false representations were material to consumers, because they concerned the quality of the affected vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Mercedes well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars with reduced emissions, and they paid accordingly.

305.   Mercedes had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Mercedes, because Mercedes had exclusive knowledge as to such facts, and because Mercedes knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Mercedes also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each country, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Mercedes had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air law and emissions regulations, and whether that

manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Mercedes represented to Plaintiff and Subclass members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective and unlawfully high emission vehicles.

306.    Mercedes actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Mercedes money, and it did so at the expense of Plaintiff and Subclass members.

307.    On information and belief, Mercedes has still not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of its referenced vehicles.

308.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by Mercedes, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Mercedes was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

309.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a

result of Mercedes' concealment of the true quality and quantity of those vehicles' emissions and Mercedes' failure to timely disclose the defect or defective design of the BlueTEC Clean Diesel engine system, the actual emissions qualities and quantities of Mercedes-branded vehicles, and the serious issues engendered by Mercedes' corporate policies. Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiff and Subclass members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

310.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Mercedes' fraudulent concealment of the defective emissions controls of the Affected Vehicles, and of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the Mercedes brand name attached to Plaintiff's and Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

311.    Accordingly, Mercedes is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

312.    Mercedes' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Mercedes made to them, in order to enrich Mercedes. Mercedes' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

E.      **Claims Brought on Behalf of the Georgia Subclass**

## COUNT XV
## VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT
## (GA. CODE ANN. § 10-1-390, *ET SEQ.*)

313.    Plaintiffs A. Eric Ngwashi and Bobby Hamilton ("Plaintiffs," for purposes of all Georgia Subclass Counts) incorporate by reference all preceding allegations as though fully set forth herein.

314.    Plaintiffs intend to assert a claim under the Georgia Fair Business Practices Act ("Georgia FBPA") which declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, GA. CODE. ANN. § 10-1-393(a), including, but not limited to, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised."  GA. CODE. ANN. § 10-1-393(b).  Plaintiffs will make a demand in satisfaction of GA. CODE. ANN.  § 10-1-399, and may amend this Complaint to assert claims under the Georgia FBPA once the required 30 days have elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Georgia FBPA.

## COUNT XVI
## VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE
## PRACTICES ACT
## (GA. CODE ANN. § 10-1-370, *ET SEQ.*)

315.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

316.    This claim is brought on behalf of the Georgia Subclass.

317.   Mercedes, Plaintiffs, and the Georgia Subclass are "persons' within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code. Ann. § 10-1-371(5).

318.   The Georgia UDTPA prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."  Ga. Code. Ann. § 10-1-372(a).  By affirmatively misrepresenting to Plaintiffs and the Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles had no significant defects, complied with EPA and state emissions regulations, and would perform and operate properly when driven in normal usage, Mercedes engaged in deceptive trade practices prohibited by the Georgia UDTPA.

319.   Mercedes participated in unfair and deceptive trade practices that violated the Georgia UDTPA as described herein.

320.   In the course of Mercedes' business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-complaint with EPA emissions requirements as described above.  Accordingly, Mercedes engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

321.    Mercedes intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Subclass members.

322.    Mercedes knew or should have known that its conduct violated the Georgia UDTPA.

323.    Plaintiffs and the Subclass members suffered ascertainable loss caused by Mercedes' misrepresentations and its concealment of and failure to disclose material information.  Subclass members who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

324.    Mercedes had an ongoing duty to all its customers to refrain from unfair and deceptive acts or practices under the Georgia UDTPA.  All owners of Affected Vehicles suffered ascertainable loss in the form of diminished value of their vehicles as a result of Mercedes' deceptive and unfair acts and practices made in the course of Mercedes' business.

325.    Mercedes' violations present a continuing risk to Plaintiffs as well as to the general public.  Mercedes' unlawful acts and practices complained of herein affect the public interest.

326.    As a direct and proximate result of Mercedes' violations of the Georgia UDTPA, Plaintiffs and the Subclass members have suffered injury-in-fact and/or actual damage.

327.    Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

328.    Plaintiffs and the Subclass members were injured as a result of Mercedes' conduct in that Plaintiffs and the Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in

value.  These injuries are the direct and natural consequence of Mercedes' misrepresentations and omissions.

329.    Plaintiffs seek an order enjoining Mercedes' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA per Ga. Code. Ann § 10-1-373.

## COUNT XVII
## BREACH OF CONTRACT
## (BASED ON GEORGIA LAW)

330.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

331.    This claim is brought on behalf of the Georgia Subclass.

332.    Mercedes' misrepresentations and omissions alleged herein, including Mercedes' failure to disclose the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls as alleged herein, caused Plaintiffs and the other Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective BlueTEC Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

333.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Mercedes and the purchaser or lessee.  Mercedes breached these contracts by selling or leasing to Plaintiffs and the other Subclass members defective Affected Vehicles and by misrepresenting or

failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls, including information known to Mercedes rendering each Affected Vehicle non-EPA-compliant, and thus less valuable, than vehicles not equipped with the defective BlueTEC Clean Diesel engine system.

334.    As a direct and proximate result of Mercedes' breach of contract, Plaintiffs and the Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT XVIII
## FRAUD BY CONCEALMENT

335.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

336.    This claim is brought on behalf of the Georgia Subclass.

337.    Mercedes designed, manufactured, marketed, sold, and/or leased Affected Vehicles to Plaintiffs and the Subclass members.  Mercedes affirmatively misrepresented to Plaintiffs and the Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles had no significant defects, complied with EPA and state emissions regulations, and would perform and operate properly when driven in normal usage.

338.    The Affected Vehicles purchased or leased by Plaintiffs and the Subclass members were, in fact, defective, non-EPA-compliant, and unreliable, because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

339.    Mercedes intentionally concealed, suppressed, and failed to disclose the facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements.

340.    As alleged in this Complaint, at all relevant times, Mercedes has held out the Affected Vehicles to be EPA-compliant reduced emissions vehicles.  Mercedes disclosed certain details about the BlueTEC Clean Diesel engine, but nonetheless, Mercedes intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

341.    The truth about the defective emissions controls, unlawfully high emissions, and non-compliance with EPA emissions requirements was known only to Mercedes; Plaintiffs and the Subclass members did not know of these facts and Mercedes actively concealed these facts from Plaintiffs and Subclass members.

342.    Plaintiffs and Subclass members reasonably relied upon Mercedes' deception. They had no way of knowing that Mercedes' representations were false and/or misleading.  As consumers, Plaintiffs and Subclass members did not, and could not, unravel Mercedes' deception on their own.   Rather, Mercedes intended to deceive Plaintiffs and Subclass members by concealing the true facts about the Affected Vehicle emissions.

343.    Mercedes also concealed and suppressed material facts concerning what is evidently the true culture of Mercedes—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant

to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Subclass members placed in its representations.  Consumers buy diesel cars from Mercedes because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing in cool weather.

344.   Mercedes' false representations were material to consumers, because they concerned the quality of the affected vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Mercedes well knew, its customers, including Plaintiffs and Subclass members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars with reduced emissions, and they paid accordingly.

345.   Mercedes had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Mercedes, because Mercedes had exclusive knowledge as to such facts, and because Mercedes knew these facts were not known to or reasonably discoverable by Plaintiffs or Subclass members.  Mercedes also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each country, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at

issue.  Having volunteered to provide information to Plaintiffs and Subclass members, Mercedes had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Mercedes represented to Plaintiffs and Subclass members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective and unlawfully high emission vehicles.

346.    Mercedes actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Mercedes money, and it did so at the expense of Plaintiffs and Subclass members.

347.    On information and belief, Mercedes has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Subclass members by concealing material information regarding the emissions qualities of its referenced vehicles.

348.    Plaintiffs and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by Mercedes, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information

concealed from them.  Plaintiffs' and Subclass members' actions were justified.  Mercedes was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Subclass members.

349.    Because of the concealment and/or suppression of the facts, Plaintiffs and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Mercedes' concealment of the true quality and quantity of those vehicles' emissions and Mercedes' failure to timely disclose the defect or defective design of the BlueTEC Clean Diesel engine system, the actual emissions qualities and quantities of Mercedes-branded vehicles, and the serious issues engendered by Mercedes' corporate policies.  Had Plaintiffs and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Subclass members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

350.    The value of Plaintiffs' and Subclass members' vehicles has diminished as a result of Mercedes' fraudulent concealment of the defective emissions controls of the Affected Vehicles, and of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the Mercedes brand name attached to Plaintiffs' and Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

351.    Accordingly, Mercedes is liable to Plaintiffs and Subclass members for damages in an amount to be proven at trial.

352.     Mercedes' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Subclass members' rights and the representations that Mercedes made to them, in order to enrich Mercedes.  Mercedes' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**F.      Claims Brought on Behalf of the Iowa Subclass**

**COUNT XIX**
**VIOLATIONS OF THE PRIVATE RIGHT OF ACTION FOR**
**CONSUMER FRAUDS ACT (IOWA CODE § 714H.1, *et seq.*)**

353.     Plaintiff Lynn Doherty Munoe ("Plaintiff," for purposes of all Iowa Subclass Counts) incorporate by reference all paragraphs as though fully set forth herein.

354.     This claim is brought on behalf of the Iowa Subclass.

355.     Defendant is a "person" as that term is defined in IOWA CODE § 714H.2(7).

356.     Plaintiffs and the Subclass members are "consumers" as that term is defined in IOWA CODE § 714H.2(3).

357.     The Iowa Private Right of Action for Consumer Frauds Act ("Iowa CFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise."  IOWA CODE § 714H.3.

358.     Mercedes participated in misleading, false, or deceptive acts that violated the Iowa CFA.   By affirmatively misrepresenting to Plaintiffs and the Subclass members in advertising and other forms of communication, including standard and uniform material provided

with each car, that the Affected Vehicles had no significant defects, complied with EPA and state emissions regulations, and would perform and operate properly when driven in normal usage, Mercedes engaged in deceptive trade practices prohibited by the Iowa CFA.

359.    Mercedes participated in unfair and deceptive trade practices that violated the Iowa CFA as described herein.

360.    In the course of Mercedes' business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-complaint with EPA emissions requirements as described above.  Accordingly, Mercedes engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

361.    Mercedes intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Subclass members.

362.    Mercedes knew or should have known that its conduct violated the Iowa CFA.

363.    Plaintiffs and the Subclass members suffered ascertainable loss caused by Mercedes' misrepresentations and its concealment of and failure to disclose material information. Class members who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

364.   Mercedes had an ongoing duty to all its customers to refrain from unfair and deceptive acts or practices under the Iowa CFA.  All owners of Affected Vehicles suffered ascertainable loss in the form of diminished value of their vehicles as a result of Mercedes' deceptive and unfair acts and practices made in the course of Mercedes' business.

365.   Mercedes' violations present a continuing risk to Plaintiffs as well as to the general public.  Mercedes' unlawful acts and practices complained of herein affect the public interest.

366.   As a direct and proximate result of Mercedes' violations of the Iowa CFA, Plaintiffs and the Subclass members have suffered injury-in-fact and/or actual damage.

367.   Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

368.   Plaintiffs and the Subclass members were injured as a result of Mercedes' conduct in that Plaintiffs and the Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Mercedes' misrepresentations and omissions.

369.   Pursuant to IOWA CODE § 714H.5, Plaintiffs seek an order enjoining Mercedes' unfair and/or deceptive acts or practices; actual damages; in addition to an award of actual damages, statutory damages up to three times the amount of actual damages awarded as a result of Mercedes' willful and wanton disregard for the rights or safety of others; attorneys' fees; and such other equitable relief as the Court deems necessary to protect the public from further violations of the Iowa CFA.

<u>COUNT XX</u>
**BREACH OF CONTRACT**
**(BASED ON IOWA LAW)**

370.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

371.    Plaintiff brings this Count on behalf of the Iowa Subclass.

372.    Mercedes' misrepresentations and omissions alleged herein, including Mercedes' failure to disclose the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls as alleged herein, caused Plaintiffs and the other Subclass members to make their purchases or leases of their Affected Vehicles.   Absent those misrepresentations and omissions, Plaintiffs and the other Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective BlueTEC Clean Diesel engine system and which were not marketed as including such a system.   Accordingly, Plaintiffs and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

373.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Mercedes and the purchaser or lessee.  Mercedes breached these contracts by selling or leasing to Plaintiffs and the other Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls, including information known to Mercedes rendering each Affected Vehicle non-EPA-compliant, and thus less valuable, than vehicles not equipped with the defective BlueTEC Clean Diesel engine system.

374.    As a direct and proximate result of Mercedes' breach of contract, Plaintiffs and the Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### COUNT XXI
### FRAUD BY CONCEALMENT

375.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

376.    This claim is brought on behalf of the Iowa Subclass.

377.    Mercedes designed, manufactured, marketed, sold, and/or leased Affected Vehicles to Plaintiffs and the Subclass members.  Mercedes affirmatively misrepresented to Plaintiffs and the Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles had no significant defects, complied with EPA and state emissions regulations, and would perform and operate properly when driven in normal usage.

378.    The Affected Vehicles purchased or leased by Plaintiffs and the Subclass members were, in fact, defective, non-EPA-compliant, and unreliable, because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

379.    Mercedes intentionally concealed, suppressed, and failed to disclose the facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements.

380.   As alleged in this Complaint, at all relevant times, Mercedes has held out the Affected Vehicles to be EPA-compliant reduced emissions vehicles.  Mercedes disclosed certain details about the BlueTEC Clean Diesel engine, but nonetheless, Mercedes intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

381.   The truth about the defective emissions controls, unlawfully high emissions, and non-compliance with EPA emissions requirements was known only to Mercedes; Plaintiffs and the Subclass members did not know of these facts and Mercedes actively concealed these facts from Plaintiffs and Subclass members.

382.   Plaintiffs and Subclass members reasonably relied upon Mercedes' deception. They had no way of knowing that Mercedes' representations were false and/or misleading.  As consumers, Plaintiffs and Subclass members did not, and could not, unravel Mercedes' deception on their own.   Rather, Mercedes intended to deceive Plaintiffs and Subclass members by concealing the true facts about the Affected Vehicle emissions.

383.   Mercedes also concealed and suppressed material facts concerning what is evidently the true culture of Mercedes—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Subclass members placed in its representations.  Consumers buy diesel cars from Mercedes because they feel they are clean diesel cars.  They do not want to be spewing noxious

gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing in cool weather.

384.    Mercedes' false representations were material to consumers, because they concerned the quality of the affected vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Mercedes well knew, its customers, including Plaintiffs and Subclass members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars with reduced emissions, and they paid accordingly.

385.    Mercedes had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Mercedes, because Mercedes had exclusive knowledge as to such facts, and because Mercedes knew these facts were not known to or reasonably discoverable by Plaintiffs or Subclass members.  Mercedes also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each country, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Subclass members, Mercedes had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles

purchased or leased by Plaintiffs and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Mercedes represented to Plaintiffs and Subclass members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective and unlawfully high emission vehicles.

386.    Mercedes actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Mercedes money, and it did so at the expense of Plaintiffs and Subclass members.

387.    On information and belief, Mercedes has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Subclass members by concealing material information regarding the emissions qualities of its referenced vehicles.

388.    Plaintiffs and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by Mercedes, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Subclass members' actions were justified.  Mercedes was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Subclass members.

389.   Because of the concealment and/or suppression of the facts, Plaintiffs and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Mercedes' concealment of the true quality and quantity of those vehicles' emissions and Mercedes' failure to timely disclose the defect or defective design of the BlueTEC Clean Diesel engine system, the actual emissions qualities and quantities of Mercedes-branded vehicles, and the serious issues engendered by Mercedes' corporate policies.  Had Plaintiffs and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Subclass members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

390.   The value of Plaintiffs' and Subclass members' vehicles has diminished as a result of Mercedes' fraudulent concealment of the defective emissions controls of the Affected Vehicles, and of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the Mercedes brand name attached to Plaintiffs' and Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

391.   Accordingly, Mercedes is liable to Plaintiffs and Subclass members for damages in an amount to be proven at trial.

392.   Mercedes' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Subclass members' rights and the representations that Mercedes made to them, in order to enrich Mercedes.  Mercedes' conduct

warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**G.      Claims Brought on Behalf of the Illinois Subclass**

**COUNT XXII**
**VIOLATION OF ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT**
**(815 ILCS 505/1, *ET SEQ*. AND 720 ILCS 295/1A)**

393.    Plaintiffs Maryana Melnyk and Paul Hermann ("Plaintiffs," for purposes of all Illinois Subclass Counts) incorporate by reference all paragraphs as though fully set forth herein.

394.    This claim is brought on behalf of the Illinois Subclass.

395.    Defendant is a "person" as that term is defined in 815 ILCS 505/1(c).

396.    Plaintiffs and the Subclass members are "consumers" as that term is defined in 815 ILCS 505/1(e).

397.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damaged thereby."  815 ILCS 505/2.

398.    Mercedes participated in misleading, false, or deceptive acts that violated the Illinois CFA.  By affirmatively misrepresenting to Plaintiffs and the Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles had no significant defects, complied with EPA and state

emissions regulations, and would perform and operate properly when driven in normal usage, Mercedes engaged in deceptive trade practices prohibited by the Illinois CFA.

399.    Mercedes participated in unfair and deceptive trade practices that violated the Illinois CFA as described herein.

400.    In the course of Mercedes' business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-complaint with EPA emissions requirements as described above.  Accordingly, Mercedes engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

401.    Mercedes intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Subclass members.

402.    Mercedes knew or should have known that its conduct violated the Illinois CFA.

403.    Plaintiffs and the Subclass members suffered ascertainable loss caused by Mercedes' misrepresentations and its concealment of and failure to disclose material information. Class members who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

404.    Mercedes had an ongoing duty to all its customers to refrain from unfair and deceptive acts or practices under the Illinois CFA.  All owners of Affected Vehicles suffered

ascertainable loss in the form of diminished value of their vehicles as a result of Mercedes' deceptive and unfair acts and practices made in the course of Mercedes' business.

405.    Mercedes' violations present a continuing risk to Plaintiffs as well as to the general public.  Mercedes' unlawful acts and practices complained of herein affect the public interest.

406.    As a direct and proximate result of Mercedes' violations of the Illinois CFA, Plaintiffs and the Subclass members have suffered injury-in-fact and/or actual damage.

407.    Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

408.    Plaintiffs and the Subclass members were injured as a result of Mercedes' conduct in that Plaintiffs and the Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Mercedes' misrepresentations and omissions.

409.    Pursuant to 815 ILCS 505/10a(a), Plaintiffs and the Subclass members seek monetary relief against Mercedes in the amount of actual damages, as well as punitive damages because Mercedes acted with fraud and/or malice and/or was grossly negligent.

410.    Plaintiffs also seek an order enjoining Mercedes' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1, *et seq*.

## COUNT XXIII
## BREACH OF CONTRACT
## (BASED ON ILLINOIS LAW)

411.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

412.     Plaintiffs brings this Count on behalf of the Illinois Subclass.

413.     Mercedes' misrepresentations and omissions alleged herein, including Mercedes' failure to disclose the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls as alleged herein, caused Plaintiffs and the other Subclass members to make their purchases or leases of their Affected Vehicles.   Absent those misrepresentations and omissions, Plaintiffs and the other Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective BlueTEC Clean Diesel engine system and which were not marketed as including such a system.   Accordingly, Plaintiffs and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

414.     Each and every sale or lease of an Affected Vehicle constitutes a contract between Mercedes and the purchaser or lessee.  Mercedes breached these contracts by selling or leasing to Plaintiffs and the other Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls, including information known to Mercedes rendering each Affected Vehicle non-EPA-compliant, and thus less valuable, than vehicles not equipped with the defective BlueTEC Clean Diesel engine system.

415.     As a direct and proximate result of Mercedes' breach of contract, Plaintiffs and the Subclass have been damaged in an amount to be proven at trial, which shall include, but is

not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT XXIV**
**FRAUD BY CONCEALMENT**

416.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

417.   This claim is brought on behalf of the Illinois Subclass.

418.   Mercedes designed, manufactured, marketed, sold, and/or leased Affected Vehicles to Plaintiffs and the Subclass members.  Mercedes affirmatively misrepresented to Plaintiffs and the Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles had no significant defects, complied with EPA and state emissions regulations, and would perform and operate properly when driven in normal usage.

419.   The Affected Vehicles purchased or leased by Plaintiffs and the Subclass members were, in fact, defective, non-EPA-compliant, and unreliable, because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

420.   Mercedes intentionally concealed, suppressed, and failed to disclose the facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements.

421.   As alleged in this Complaint, at all relevant times, Mercedes has held out the Affected Vehicles to be EPA-compliant reduced emissions vehicles.  Mercedes disclosed certain details about the BlueTEC Clean Diesel engine, but nonetheless, Mercedes intentionally failed to

disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

422.    The truth about the defective emissions controls, unlawfully high emissions, and non-compliance with EPA emissions requirements was known only to Mercedes; Plaintiffs and the Subclass members did not know of these facts and Mercedes actively concealed these facts from Plaintiffs and Subclass members.

423.    Plaintiffs and Subclass members reasonably relied upon Mercedes' deception. They had no way of knowing that Mercedes' representations were false and/or misleading.  As consumers, Plaintiffs and Subclass members did not, and could not, unravel Mercedes' deception on their own.   Rather, Mercedes intended to deceive Plaintiffs and Subclass members by concealing the true facts about the Affected Vehicle emissions.

424.    Mercedes also concealed and suppressed material facts concerning what is evidently the true culture of Mercedes—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Subclass members placed in its representations.  Consumers buy diesel cars from Mercedes because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing in cool weather.

425.    Mercedes' false representations were material to consumers, because they concerned the quality of the affected vehicles, because they concerned compliance with

applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Mercedes well knew, its customers, including Plaintiffs and Subclass members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars with reduced emissions, and they paid accordingly.

426.   Mercedes had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Mercedes, because Mercedes had exclusive knowledge as to such facts, and because Mercedes knew these facts were not known to or reasonably discoverable by Plaintiffs or Subclass members. Mercedes also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each country, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiffs, Mercedes had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Mercedes

represented to Plaintiffs and Subclass members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective and unlawfully high emission vehicles.

427.    Mercedes actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Mercedes money, and it did so at the expense of Plaintiffs and Subclass members.

428.    On information and belief, Mercedes has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Subclass members by concealing material information regarding the emissions qualities of its referenced vehicles.

429.    Plaintiffs and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by Mercedes, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Subclass members' actions were justified.  Mercedes was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Subclass members.

430.    Because of the concealment and/or suppression of the facts, Plaintiffs and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Mercedes' concealment of the true quality and quantity of those vehicles' emissions and Mercedes' failure to timely disclose the defect or defective design of the BlueTEC

Clean Diesel engine system, the actual emissions qualities and quantities of Mercedes-branded vehicles, and the serious issues engendered by Mercedes' corporate policies.  Had Plaintiffs and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Subclass members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

431.    The value of Plaintiffs' and Subclass members' vehicles has diminished as a result of Mercedes' fraudulent concealment of the defective emissions controls of the Affected Vehicles, and of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the Mercedes brand name attached to Plaintiffs' and Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

432.    Accordingly, Mercedes is liable to Plaintiffs and Subclass members for damages in an amount to be proven at trial.

433.    Mercedes' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Subclass members' rights and the representations that Mercedes made to them, in order to enrich Mercedes.  Mercedes' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**H.**     **Claims Brought on Behalf of the Michigan Subclass**

**COUNT XXV**
**VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT**
(MICH. COMP. LAWS § 445.903, *et seq.*)

434.     Plaintiff Brenda O'Neal ("Plaintiff," for purposes of all Michigan Subclass Counts) incorporates by reference all paragraphs as though fully set forth herein.

435.     This claim is brought on behalf of the Michigan Subclass.

436.     Plaintiff and the Michigan Class Members were "person[s]" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d).

437.     The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce …."   MICH. COMP. LAWS § 445.903(1).   Mercedes engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA, including:   "(c) Representing that goods or services have … characteristics … that they do not have ….;" "(e) Representing that goods or services are of a particular standard … if they are of another;" "(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." MICH. COMP. LAWS § 445.903(1).

438.     Mercedes participated in misleading, false, or deceptive acts that violated the Michigan CPA.   By affirmatively misrepresenting to Plaintiff and the Subclass members in advertising and other forms of communication, including standard and uniform material provided

- 115 -

with each car, that the Affected Vehicles had no significant defects, complied with EPA and state emissions regulations, and would perform and operate properly when driven in normal usage, Mercedes engaged in deceptive trade practices prohibited by the Michigan CPA.

439.    Mercedes participated in unfair and deceptive trade practices that violated the Michigan CPA as described herein.

440.    In the course of Mercedes' business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-complaint with EPA emissions requirements as described above.  Accordingly, Mercedes engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

441.    Mercedes intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Subclass members.

442.    Mercedes knew or should have known that its conduct violated the Michigan CPA.

443.    Plaintiff and the Subclass members suffered ascertainable loss caused by Mercedes' misrepresentations and its concealment of and failure to disclose material information. Subclass members who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

444.     Mercedes had an ongoing duty to all its customers to refrain from unfair and deceptive acts or practices under the Michigan CPA.  All owners of Affected Vehicles suffered ascertainable loss in the form of diminished value of their vehicles as a result of Mercedes' deceptive and unfair acts and practices made in the course of Mercedes' business.

445.     Mercedes' violations present a continuing risk to Plaintiff as well as to the general public.  Mercedes' unlawful acts and practices complained of herein affect the public interest.

446.     As a direct and proximate result of Mercedes' violations of the Michigan CPA, Plaintiff and the Subclass members have suffered injury-in-fact and/or actual damage.

447.     Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

448.     Plaintiff and the Subclass members were injured as a result of Mercedes' conduct in that Plaintiff and the Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Mercedes' misrepresentations and omissions.

449.     Plaintiff seeks injunctive relief to enjoin Mercedes from continuing its unfair and deceptive acts; monetary relief against Volkswagen measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for Plaintiff and each Michigan Class member; reasonable attorneys' fees; and any other just and proper relief available under MICH. COMP. LAWS § 445.911.

450.     Plaintiff also seeks punitive damages against Mercedes because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others. Mercedes intentionally and willfully misrepresented the safety and reliability of the Affected

Vehicles, concealed material facts that only they knew, and repeatedly promised Plaintiff and Michigan Class Members that all vehicles were environmentally friendly—all to avoid the expense and public relations nightmare of correcting a noxious flaw in the Affected Vehicles. Mercedes' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

**COUNT XXVI**
**BREACH OF CONTRACT**
**(BASED ON MICHIGAN LAW)**

451. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

452. Plaintiff brings this Count on behalf of the Michigan Subclass.

453. Mercedes' misrepresentations and omissions alleged herein, including Mercedes' failure to disclose the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls as alleged herein, caused Plaintiff and the other Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective BlueTEC Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

454. Each and every sale or lease of an Affected Vehicle constitutes a contract between Mercedes and the purchaser or lessee.  Mercedes breached these contracts by selling or leasing to Plaintiff and the other Subclass members defective Affected Vehicles and by misrepresenting or

failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls, including information known to Mercedes rendering each Affected Vehicle non-EPA-compliant, and thus less valuable, than vehicles not equipped with the defective BlueTEC Clean Diesel engine system.

455.    As a direct and proximate result of Mercedes' breach of contract, Plaintiff and the Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT XXVII
## FRAUD BY CONCEALMENT

456.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

457.    This claim is brought on behalf of the Michigan Subclass.

458.    Mercedes designed, manufactured, marketed, sold, and/or leased Affected Vehicles to Plaintiff and the Subclass members.   Mercedes affirmatively misrepresented to Plaintiff and the Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles had no significant defects, complied with EPA and state emissions regulations, and would perform and operate properly when driven in normal usage.

459.    The Affected Vehicles purchased or leased by Plaintiff and the Subclass members were, in fact, defective, non-EPA-compliant, and unreliable, because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

460.    Mercedes intentionally concealed, suppressed, and failed to disclose the facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements.

461.    As alleged in this Complaint, at all relevant times, Mercedes has held out the Affected Vehicles to be EPA-compliant reduced emissions vehicles.  Mercedes disclosed certain details about the BlueTEC Clean Diesel engine, but nonetheless, Mercedes intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

462.    The truth about the defective emissions controls, unlawfully high emissions, and non-compliance with EPA emissions requirements was known only to Mercedes; Plaintiff and the Subclass members did not know of these facts and Mercedes actively concealed these facts from Plaintiff and Subclass members.

463.    Plaintiffs and Subclass members reasonably relied upon Mercedes' deception. They had no way of knowing that Mercedes' representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Mercedes' deception on their own.   Rather, Mercedes intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicle emissions.

464.    Mercedes also concealed and suppressed material facts concerning what is evidently the true culture of Mercedes—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant

to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Mercedes because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing in cool weather.

465.   Mercedes' false representations were material to consumers, because they concerned the quality of the affected vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Mercedes well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars with reduced emissions, and they paid accordingly.

466.   Mercedes had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Mercedes, because Mercedes had exclusive knowledge as to such facts, and because Mercedes knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Mercedes also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each country, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at

issue.  Having volunteered to provide information to Plaintiff and Subclass members, Mercedes had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Mercedes represented to Plaintiff and Subclass members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective and unlawfully high emission vehicles.

467.   Mercedes actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Mercedes money, and it did so at the expense of Plaintiff and Subclass members.

468.   On information and belief, Mercedes has still not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of its referenced vehicles.

469.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by Mercedes, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information

concealed from them.  Plaintiff's and Subclass members' actions were justified.  Mercedes was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

470.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Mercedes' concealment of the true quality and quantity of those vehicles' emissions and Mercedes' failure to timely disclose the defect or defective design of the BlueTEC Clean Diesel engine system, the actual emissions qualities and quantities of Mercedes-branded vehicles, and the serious issues engendered by Mercedes' corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiff and Subclass members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

471.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Mercedes' fraudulent concealment of the defective emissions controls of the Affected Vehicles, and of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the Mercedes brand name attached to Plaintiff's and Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

472.    Accordingly, Mercedes is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

473.     Mercedes' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Mercedes made to them, in order to enrich Mercedes.  Mercedes' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## I.     Claims Brought on Behalf of the Minnesota Subclass

### <u>COUNT XXVIII</u>
### VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT
### (MINN. STAT. § 325F.68, *et seq.*)

474.     Plaintiff Charles Wolford ("Plaintiff," for purposes of all Minnesota Subclass Counts) incorporates by reference all paragraphs as though fully set forth herein.

475.     This claim is brought on behalf of the Minnesota Subclass.

476.     The Affected Vehicles constitute "merchandise" within the meaning of MINN. STAT. § 325F.68(2).

477.     The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby …."  MINN. STAT. § 325F.69(1).

478.     Mercedes participated in misleading, false, or deceptive acts that violated the Minnesota CFA.  By affirmatively misrepresenting to Plaintiff and the Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles had no significant defects, complied with EPA and state emissions regulations, and would perform and operate properly when driven in normal usage, Mercedes engaged in deceptive trade practices prohibited by the Minnesota CFA.

479.    Mercedes participated in unfair and deceptive trade practices that violated the Minnesota CFA as described herein.

480.    In the course of Mercedes' business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-complaint with EPA emissions requirements as described above.  Accordingly, Mercedes engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

481.    Mercedes intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Subclass members.

482.    Mercedes knew or should have known that its conduct violated the Minnesota CFA.

483.    Plaintiff and the Subclass members suffered ascertainable loss caused by Mercedes' misrepresentations and its concealment of and failure to disclose material information. Subclass members who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

484.    Mercedes had an ongoing duty to all its customers to refrain from unfair and deceptive acts or practices under the Minnesota CFA.  All owners of Affected Vehicles suffered

ascertainable loss in the form of diminished value of their vehicles as a result of Mercedes' deceptive and unfair acts and practices made in the course of Mercedes' business.

485.     Mercedes' violations present a continuing risk to Plaintiff as well as to the general public.  Mercedes' unlawful acts and practices complained of herein affect the public interest.

486.     As a direct and proximate result of Mercedes' violations of the Minnesota CFA, Plaintiffs and the Subclass members have suffered injury-in-fact and/or actual damage.

487.     Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

488.     Plaintiff and the Subclass members were injured as a result of Mercedes' conduct in that Plaintiff and the Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Mercedes' misrepresentations and omissions.

489.     Pursuant to MINN. STAT. § 8.31(3a), Plaintiffs and the Minnesota Class seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

490.     Plaintiff also seeks punitive damages under MINN. STAT. § 549.20(1)(a) given the clear and convincing evidence that Mercedes' acts show deliberate disregard for the rights or safety of others.

## COUNT XXIX
## BREACH OF CONTRACT
## (BASED ON MINNESOTA LAW)

491.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

492.     Plaintiff brings this Count on behalf of the Minnesota Subclass.

- 126 -

493.    Mercedes' misrepresentations and omissions alleged herein, including Mercedes' failure to disclose the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls as alleged herein, caused Plaintiff and the other Subclass members to make their purchases or leases of their Affected Vehicles.   Absent those misrepresentations and omissions, Plaintiff and the other Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective BlueTEC Clean Diesel engine system and which were not marketed as including such a system.   Accordingly, Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

494.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Mercedes and the purchaser or lessee.   Mercedes breached these contracts by selling or leasing to Plaintiff and the other Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls, including information known to Mercedes rendering each Affected Vehicle non-EPA-compliant, and thus less valuable, than vehicles not equipped with the defective BlueTEC Clean Diesel engine system.

495.    As a direct and proximate result of Mercedes' breach of contract, Plaintiff and the Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT XXX
## FRAUD BY CONCEALMENT

496.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

497.     This claim is brought on behalf of the Minnesota Subclass.

498.     Mercedes designed, manufactured, marketed, sold, and/or leased Affected Vehicles to Plaintiff and the Subclass members.   Mercedes affirmatively misrepresented to Plaintiff and the Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles had no significant defects, complied with EPA and state emissions regulations, and would perform and operate properly when driven in normal usage.

499.     The Affected Vehicles purchased or leased by Plaintiff and the Subclass members were, in fact, defective, non-EPA-compliant, and unreliable, because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

500.     Mercedes intentionally concealed, suppressed, and failed to disclose the facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements.

501.     As alleged in this Complaint, at all relevant times, Mercedes has held out the Affected Vehicles to be EPA-compliant reduced emissions vehicles.  Mercedes disclosed certain details about the BlueTEC Clean Diesel engine, but nonetheless, Mercedes intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective

emissions controls, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

502.    The truth about the defective emissions controls, unlawfully high emissions, and non-compliance with EPA emissions requirements was known only to Mercedes; Plaintiff and the Subclass members did not know of these facts and Mercedes actively concealed these facts from Plaintiff and Subclass members.

503.    Plaintiff and Subclass members reasonably relied upon Mercedes' deception. They had no way of knowing that Mercedes' representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Mercedes' deception on their own.   Rather, Mercedes intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicle emissions.

504.    Mercedes also concealed and suppressed material facts concerning what is evidently the true culture of Mercedes—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Mercedes because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing in cool weather.

505.    Mercedes' false representations were material to consumers, because they concerned the quality of the affected vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Mercedes

well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars with reduced emissions, and they paid accordingly.

506.    Mercedes had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Mercedes, because Mercedes had exclusive knowledge as to such facts, and because Mercedes knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Mercedes also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each country, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Mercedes had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Mercedes represented to Plaintiff and Subclass members that they were

purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective and unlawfully high emission vehicles.

507.    Mercedes actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Mercedes money, and it did so at the expense of Plaintiff and Subclass members.

508.    On information and belief, Mercedes has still not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of its referenced vehicles.

509.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by Mercedes, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Mercedes was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

510.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Mercedes' concealment of the true quality and quantity of those vehicles' emissions and Mercedes' failure to timely disclose the defect or defective design of the BlueTEC Clean Diesel engine system, the actual emissions qualities and quantities of Mercedes-branded vehicles, and

the serious issues engendered by Mercedes' corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiff and Subclass members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

511.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Mercedes' fraudulent concealment of the defective emissions controls of the Affected Vehicles, and of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the Mercedes brand name attached to Plaintiff's and Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

512.    Accordingly, Mercedes is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

513.    Mercedes' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Mercedes made to them, in order to enrich Mercedes.  Mercedes' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

J.      **Claims Brought on Behalf of the New York Subclass**

## COUNT XXXI
## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
## (N.Y. GEN. BUS. LAW § 349)

514.    Plaintiffs Thomas Weiss and John Laurino (Plaintiffs, for purposes of all New York Subclass Counts) incorporate by reference all preceding allegations as though fully set forth herein.

515.    This claim is brought on behalf of the New York Subclass.

516.    New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

517.    In the course of Mercedes' business, it willfully failed to disclose and actively concealed the facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements.  Accordingly, Mercedes engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in N.Y. GEN. BUS. LAW § 349, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

518.    Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

519.    Mercedes' unlawful conduct constitutes unfair acts or practices that have the capacity to deceive consumers, and that have a broad impact on consumers at large.

520.    Mercedes' conduct proximately caused injuries to Plaintiffs and the other Subclass members.

521.    Plaintiffs and the other Subclass members were injured as a result of Mercedes' conduct in that Plaintiffs and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Mercedes' misrepresentations and omissions.

### COUNT XXXII
### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350
### (N.Y. GEN. BUS. LAW § 350)

522.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

523.    This claim is brought on behalf of the New York Subclass.

524.    New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]"  False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of … representations [made] with respect to the commodity…."  N.Y. Gen. Bus. Law § 350-a.

525.    Mercedes caused to be made or disseminated throughout New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Mercedes, to be untrue and misleading to consumers, including Plaintiffs and the other Subclass members.

526.    Mercedes has violated N.Y. Gen. Bus. Law § 350 because the misrepresentations and omissions alleged herein, including but not limited to Mercedes' failure to disclose that the

NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, were material and likely to deceive a reasonable consumer.

527.   Plaintiffs and the other Subclass members have suffered injury, including the loss of money or property, as a result of Mercedes' false advertising.  In purchasing or leasing their Affected Vehicles, Plaintiffs and the other Subclass members relied on the misrepresentations and/or omissions of Mercedes with respect to the quality, functionality, and reliability of the Affected Vehicles.  Mercedes' representations turned out to be untrue because the BlueTEC Clean Diesel engine system installed in Affected Vehicles did not comply with EPA regulations. Had Plaintiffs and the other Subclass members known this, they would not have purchased or leased their Affected Vehicles and/or paid as much for them.

528.   Accordingly, Plaintiffs and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of the bargain for their Affected Vehicles, which have also suffered diminution in value.

529.   Plaintiffs, individually and on behalf of the other Subclass members, request that this Court enter such orders or judgments as may be necessary to enjoin Mercedes from continuing its unfair, unlawful and/or deceptive practices.  Plaintiffs and the other Subclass members are also entitled to recover their actual damages or $500, whichever is greater. Because Mercedes acted willfully or knowingly, Plaintiffs and the other Subclass members are entitled to recover three times actual damages, up to $10,000.

**COUNT XXXIII**
**BREACH OF CONTRACT**
**(BASED ON NEW YORK LAW)**

530.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

531.   Plaintiffs bring this Count on behalf of the New York Subclass members.

532.    Mercedes' misrepresentations and omissions alleged herein, including Mercedes' failure to disclose the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls as alleged herein, caused Plaintiffs and the other Subclass members to make their purchases or leases of their Affected Vehicles.   Absent those misrepresentations and omissions, Plaintiffs and the other Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective BlueTEC Clean Diesel engine system and which were not marketed as including such a system.   Accordingly, Plaintiffs and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

533.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Mercedes and the purchaser or lessee.  Mercedes breached these contracts by selling or leasing to Plaintiffs and the other Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls, including information known to Mercedes rendering each Affected Vehicle non-EPA-compliant, and thus less valuable, than vehicles not equipped with the defective BlueTEC Clean Diesel engine system.

534.    As a direct and proximate result of Mercedes' breach of contract, Plaintiffs and the Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT XXXIV
## FRAUD BY CONCEALMENT

535.    Plaintiffs incorporates by reference all preceding allegations as though fully set forth herein.

536.    This claim is brought on behalf of the New York Subclass.

537.    Mercedes designed, manufactured, marketed, sold, and/or leased Affected Vehicles to Plaintiffs and the Subclass members.  Mercedes affirmatively misrepresented to Plaintiffs and the Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles had no significant defects, complied with EPA and state emissions regulations, and would perform and operate properly when driven in normal usage.

538.    The Affected Vehicles purchased or leased by Plaintiffs and the Subclass members were, in fact, defective, non-EPA-compliant, and unreliable, because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

539.    Mercedes intentionally concealed, suppressed, and failed to disclose the facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements.

540.    As alleged in this Complaint, at all relevant times, Mercedes has held out the Affected Vehicles to be EPA-compliant reduced emissions vehicles.  Mercedes disclosed certain details about the BlueTEC Clean Diesel engine, but nonetheless, Mercedes intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective

emissions controls, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

541.    The truth about the defective emissions controls, unlawfully high emissions, and non-compliance with EPA emissions requirements was known only to Mercedes; Plaintiffs and the Subclass members did not know of these facts and Mercedes actively concealed these facts from Plaintiffs and Subclass members.

542.    Plaintiffs and Subclass members reasonably relied upon Mercedes' deception. They had no way of knowing that Mercedes' representations were false and/or misleading.  As consumers, Plaintiffs and Subclass members did not, and could not, unravel Mercedes' deception on their own.   Rather, Mercedes intended to deceive Plaintiffs and Subclass members by concealing the true facts about the Affected Vehicle emissions.

543.    Mercedes also concealed and suppressed material facts concerning what is evidently the true culture of Mercedes—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Subclass members placed in its representations.  Consumers buy diesel cars from Mercedes because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing in cool weather.

544.    Mercedes' false representations were material to consumers, because they concerned the quality of the affected vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Mercedes

well knew, its customers, including Plaintiffs and Subclass members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars with reduced emissions, and they paid accordingly.

545.   Mercedes had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Mercedes, because Mercedes had exclusive knowledge as to such facts, and because Mercedes knew these facts were not known to or reasonably discoverable by Plaintiffs or Subclass members.  Mercedes also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each country, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Subclass members, Mercedes had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Mercedes represented to Plaintiffs and Subclass members that they were

purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective and unlawfully high emission vehicles.

546.   Mercedes actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Mercedes money, and it did so at the expense of Plaintiffs and Subclass members.

547.   On information and belief, Mercedes has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Subclass members by concealing material information regarding the emissions qualities of its referenced vehicles.

548.   Plaintiffs and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by Mercedes, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Subclass members' actions were justified.  Mercedes was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Subclass members.

549.   Because of the concealment and/or suppression of the facts, Plaintiffs and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Mercedes' concealment of the true quality and quantity of those vehicles' emissions and Mercedes' failure to timely disclose the defect or defective design of the BlueTEC Clean Diesel engine system, the actual emissions qualities and quantities of Mercedes-branded

vehicles, and the serious issues engendered by Mercedes' corporate policies.  Had Plaintiffs and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Subclass members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

550.    The value of Plaintiffs' and Subclass members' vehicles has diminished as a result of Mercedes' fraudulent concealment of the defective emissions controls of the Affected Vehicles, and of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the Mercedes brand name attached to Plaintiffs' and Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

551.    Accordingly, Mercedes is liable to Plaintiffs and Subclass members for damages in an amount to be proven at trial.

552.    Mercedes' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Subclass members' rights and the representations that Mercedes made to them, in order to enrich Mercedes.  Mercedes' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**K.**      **Claims Brought on Behalf of the Ohio Subclass**

## COUNT XXXV
## VIOLATIONS OF THE CONSUMER SALES PRACTICES ACT
## (OHIO REV. CODE §§ 1345.01, *ET SEQ.*)

553.      Plaintiff Andrew Deutsch (Plaintiff, for purposes of all Ohio Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

554.      This claim is brought on behalf of the Ohio Subclass.

555.      Plaintiff and the other Ohio Subclass members are "consumers" as defined by the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 ("OCSPA").  Mercedes is a "supplier" as defined by the OCSPA.  Plaintiff's and the other Ohio Subclass members' purchases or leases of Affected Vehicles were "consumer transactions" as defined by the OCSPA.

556.      In the course of Mercedes' business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above. Accordingly, Mercedes engaged in unfair and deceptive trade practices, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.  Further, Mercedes' acts and practices described herein offend established public policy because the harm they cause to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and because Mercedes fraudulently concealed the defective nature of the Affected Vehicles from consumers.

557.    Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

558.    Mercedes' conduct proximately caused injuries to Plaintiff and the other Class and Subclass members.

559.    Plaintiff and the other Class members were injured as a result of Mercedes' conduct in that Plaintiff and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.   These injuries are the direct and natural consequence of Mercedes' misrepresentations and omissions.

560.    Plaintiff and the Class sustained damages as a result of Mercedes' unlawful acts and are, therefore, entitled to damages and other relief as provided under the OCSPA.

561.    Plaintiff also seeks court costs and attorneys' fees as a result of Mercedes' violations of the OCSPA as provided in Ohio Rev. Code § 1345.09.

## COUNT XXXVI
## FRAUD BY CONCEALMENT UNDER OHIO LAW

562.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

563.    This claim is brought on behalf of the Ohio Subclass.

564.    Mercedes designed, manufactured, marketed, sold, and/or leased Affected Vehicles to Plaintiff and the Subclass members.   Mercedes affirmatively misrepresented to Plaintiff and the Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles had no significant defects, complied with EPA and state emissions regulations, and would perform and operate properly when driven in normal usage.

565.     The Affected Vehicles purchased or leased by Plaintiff and the Subclass members were, in fact, defective, non-EPA-compliant, and unreliable, because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

566.     Mercedes intentionally concealed, suppressed, and failed to disclose the facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements.

567.     As alleged in this Complaint, at all relevant times, Mercedes has held out the Affected Vehicles to be EPA-compliant reduced emissions vehicles.  Mercedes disclosed certain details about the BlueTEC Clean Diesel engine, but nonetheless, Mercedes intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

568.     The truth about the defective emissions controls, unlawfully high emissions, and non-compliance with EPA emissions requirements was known only to Mercedes; Plaintiff and the Subclass members did not know of these facts and Mercedes actively concealed these facts from Plaintiff and Subclass members.

569.     Plaintiff and Subclass members reasonably relied upon Mercedes' deception.  They had no way of knowing that Mercedes' representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Mercedes' deception on their own.  Rather, Mercedes intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicle emissions.

570.     Mercedes also concealed and suppressed material facts concerning what is evidently the true culture of Mercedes—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Mercedes because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing in cool weather.

571.     Mercedes' false representations were material to consumers, because they concerned the quality of the affected vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Mercedes well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars with reduced emissions, and they paid accordingly.

572.     Mercedes had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Mercedes, because Mercedes had exclusive knowledge as to such facts, and because Mercedes knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Mercedes also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each country, which were misleading, deceptive, and

incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Mercedes had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Mercedes represented to Plaintiff and Subclass members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective and unlawfully high emission vehicles.

573.   Mercedes actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Mercedes money, and it did so at the expense of Plaintiff and Subclass members.

574.   On information and belief, Mercedes has still not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of its referenced vehicles.

575.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed

and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by Mercedes, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff' and Subclass members' actions were justified.  Mercedes was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

576.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Mercedes' concealment of the true quality and quantity of those vehicles' emissions and Mercedes' failure to timely disclose the defect or defective design of the BlueTEC Clean Diesel engine system, the actual emissions qualities and quantities of Mercedes-branded vehicles, and the serious issues engendered by Mercedes' corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiff and Subclass members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

577.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Mercedes' fraudulent concealment of the defective emissions controls of the Affected Vehicles, and of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the Mercedes brand name attached to Plaintiff's and Subclass members' vehicles and made any reasonable

consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

578.    Accordingly, Mercedes is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

579.    Mercedes' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Mercedes made to them, in order to enrich Mercedes.  Mercedes' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT XXXVII
## BREACH OF CONTRACT
## (BASED ON OHIO LAW)

580.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

581.    Plaintiff brings this Count on behalf of Ohio Subclass members.

582.    Mercedes' misrepresentations and omissions alleged herein, including Mercedes' failure to disclose the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls as alleged herein, caused Plaintiff and the other Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective BlueTEC Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other

Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

583.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Mercedes and the purchaser or lessee.  Mercedes breached these contracts by selling or leasing to Plaintiff and the other Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls, including information known to Mercedes rendering each Affected Vehicle non-EPA-compliant, and thus less valuable, than vehicles not equipped with the defective BlueTEC Clean Diesel engine system.

584.    As a direct and proximate result of Mercedes' breach of contract, Plaintiff and the Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**L.    Claims Brought on Behalf of the Washington Subclass**

<u>**COUNT XXXVIII**</u>
**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT**
**(WASH. REV. CODE ANN. §§ 19.86.010, *ET SEQ.*)**

585.    Plaintiffs Michael Medler and Dr. Gregory Chan ("Plaintiffs," for purposes of all Washington Subclass Counts) incorporate by reference all preceding allegations as though fully set forth herein.

586.    Plaintiffs bring this Count on behalf of the Washington Subclass.

587.    Mercedes, Plaintiffs, and the Washington Subclass are a "person" under WASH. REV. CODE ANN. § 19.86.010(1) ("Washington CPA").

588.   Mercedes engaged in "trade" or "commerce" under WASH. REV. CODE ANN. § 19.86.010(2).

589.   In the course of Mercedes' business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above. Accordingly, Mercedes engaged in unfair and deceptive trade practices, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.  Further, Mercedes' acts and practices described herein offend established public policy because the harm they cause to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and because Mercedes fraudulently concealed the defective nature of the Affected Vehicles from consumers.

590.   Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

591.   Mercedes' conduct proximately caused injuries to Plaintiffs and the other Subclass members.

592.   Plaintiffs and the other Subclass members were injured as a result of Mercedes' conduct in that Plaintiffs and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Mercedes' misrepresentations and omissions.

593.    Pursuant to WASH. REV. CODE § 19.86.095, Plaintiffs will serve the Washington Attorney General with a copy of this Complaint as Plaintiffs and the Washington Subclass members seek injunctive relief.

594.    As a direct and proximate result of Mercedes' breach of contract, Plaintiffs and the Washington Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, attorneys' fees, costs, treble damages, and other damages allowed by law.

**COUNT XXXIX**
**BREACH OF CONTRACT**
**(BASED ON WASHINGTON LAW)**

595.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

596.    Plaintiffs bring this Count on behalf of the Washington Subclass members.

597.    Mercedes' misrepresentations and omissions alleged herein, including Mercedes' failure to disclose the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls as alleged herein, caused Plaintiffs and the other Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective BlueTEC Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

598.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Mercedes and the purchaser or lessee.  Mercedes breached these contracts by selling or leasing to Plaintiffs and the other Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls, including information known to Mercedes rendering each Affected Vehicle non-EPA-compliant, and thus less valuable, than vehicles not equipped with the defective BlueTEC Clean Diesel engine system.

599.    As a direct and proximate result of Mercedes' breach of contract, Plaintiffs and the Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT XXXX
## FRAUD BY CONCEALMENT

600.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

601.    This claim is brought on behalf of the Washington Subclass.

602.    Mercedes designed, manufactured, marketed, sold, and/or leased Affected Vehicles to Plaintiffs and the Subclass members.  Mercedes affirmatively misrepresented to Plaintiffs and the Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles had no significant defects, complied with EPA and state emissions regulations, and would perform and operate properly when driven in normal usage.

603.    The Affected Vehicles purchased or leased by Plaintiffs and the Subclass members were, in fact, defective, non-EPA-compliant, and unreliable, because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

604.    Mercedes intentionally concealed, suppressed, and failed to disclose the facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements.

605.    As alleged in this Complaint, at all relevant times, Mercedes has held out the Affected Vehicles to be EPA-compliant reduced emissions vehicles.  Mercedes disclosed certain details about the BlueTEC Clean Diesel engine, but nonetheless, Mercedes intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

606.    The truth about the defective emissions controls, unlawfully high emissions, and non-compliance with EPA emissions requirements was known only to Mercedes; Plaintiffs and the Subclass members did not know of these facts and Mercedes actively concealed these facts from Plaintiffs and Subclass members.

607.    Plaintiffs and Subclass members reasonably relied upon Mercedes' deception. They had no way of knowing that Mercedes' representations were false and/or misleading.  As consumers, Plaintiffs and Subclass members did not, and could not, unravel Mercedes' deception

on their own.   Rather, Mercedes intended to deceive Plaintiffs and Subclass members by concealing the true facts about the Affected Vehicle emissions.

608.   Mercedes also concealed and suppressed material facts concerning what is evidently the true culture of Mercedes—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.   It also emphasized profits and sales above the trust that Plaintiffs and Subclass members placed in its representations.   Consumers buy diesel cars from Mercedes because they feel they are clean diesel cars.   They do not want to be spewing noxious gases into the environment.   And yet, that is precisely what the Affected Vehicles are doing in cool weather.

609.   Mercedes' false representations were material to consumers, because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.   As Mercedes well knew, its customers, including Plaintiffs and Subclass members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars with reduced emissions, and they paid accordingly.

610.   Mercedes had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Mercedes, because Mercedes had exclusive knowledge as to such facts, and because Mercedes knew these facts were not known to or reasonably discoverable by Plaintiffs or Subclass members.   Mercedes also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with

respect to emissions standards, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each country, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Subclass members, Mercedes had the duty to disclose not just the partial truth, but the entire truth.   These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Mercedes represented to Plaintiffs and Subclass members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective and unlawfully high emission vehicles.

611.    Mercedes actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Mercedes money, and it did so at the expense of Plaintiffs and Subclass members.

612.    On information and belief, Mercedes has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Subclass members by concealing material information regarding the emissions qualities of its referenced vehicles.

613.    Plaintiffs and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly *reduced emissions* diesel cars manufactured by Mercedes, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Subclass members' actions were justified.  Mercedes was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Subclass members.

614.    Because of the concealment and/or suppression of the facts, Plaintiffs and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Mercedes' concealment of the true quality and quantity of those vehicles' emissions and Mercedes' failure to timely disclose the defect or defective design of the BlueTEC Clean Diesel engine system, the actual emissions qualities and quantities of Mercedes-branded vehicles, and the serious issues engendered by Mercedes' corporate policies.  Had Plaintiffs and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Subclass members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

615.    The value of Plaintiffs' and Subclass members' vehicles has diminished as a result of Mercedes' fraudulent concealment of the defective emissions controls of the Affected Vehicles, and of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the Mercedes

brand name attached to Plaintiffs' and Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

616.    Accordingly, Mercedes is liable to Plaintiffs and Subclass members for damages in an amount to be proven at trial.

617.    Mercedes' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Subclass members' rights and the representations that Mercedes made to them, in order to enrich Mercedes.  Mercedes' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**M.    Claims Brought on Behalf of the Wisconsin Subclass**

**COUNT XXXXI**
**VIOLATIONS OF THE WISCONSIN**
**DECEPTIVE TRADE PRACTICES ACT**
**(WIS. STAT. § 110.18)**

618.    Plaintiff Lars Dannberg ("Plaintiff," for purposes of all Wisconsin Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

619.    Plaintiff brings this claim on behalf of the Wisconsin Subclass.

620.    Mercedes is a "person, firm, corporation or association" within the meaning of WIS. STAT. § 100.18(1).

621.    Plaintiff and Wisconsin Subclass members are members of "the public" within the meaning of WIS. STAT. § 100.18(1).  Plaintiff and Wisconsin Subclass members purchased or leased one or more Affected Vehicles.

622.    The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits a "representation or statement of fact which is untrue, deceptive or misleading."  WIS. STAT.

§ 100.18(1).  Mercedes engaged in unfair and deceptive acts and practices and violated the Wisconsin DTPA.

623.    In the course of Mercedes' business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above. Accordingly, Mercedes engaged in unfair and deceptive trade practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; advertising the Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.  Further, Mercedes' acts and practices described herein offend established public policy because the harm they cause to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and because Mercedes fraudulently concealed the defective nature of the Affected Vehicles from consumers.

624.    Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

625.    Mercedes' conduct proximately caused injuries to Plaintiff and the other Subclass members.

626.    Plaintiff and the other Subclass members were injured as a result of Mercedes' conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Mercedes' misrepresentations and omissions.

627.    Plaintiff and the Wisconsin Subclass are entitled to damages and other relief provided for under WIS. STAT. § 100.18(11)(b)(2).  Because Mercedes' conduct was committed knowingly and/or intentionally, Plaintiff and the Wisconsin Subclass are entitled to treble damages.

628.    Plaintiff and the Wisconsin Subclass also seek court costs and attorneys' fees under WIS. STAT. § 110.18(11)(b)(2).

### COUNT XXXXII
### BREACH OF CONTRACT
### (BASED ON WISCONSIN LAW)

629.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

630.    Plaintiff brings this Count on behalf of the Wisconsin Subclass members.

631.    Mercedes' misrepresentations and omissions alleged herein, including Mercedes' failure to disclose the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls as alleged herein, caused Plaintiff and the other Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective BlueTEC Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

632.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Mercedes and the purchaser or lessee.  Mercedes breached these contracts by selling or leasing to

- 159 -

Plaintiff and the other Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls, including information known to Mercedes rendering each Affected Vehicle non-EPA-compliant, and thus less valuable, than vehicles not equipped with the defective BlueTEC Clean Diesel engine system.

633.    As a direct and proximate result of Mercedes' breach of contract, Plaintiff and Subclass members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT XXXXIII
## FRAUD BY CONCEALMENT

634.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

635.    This claim is brought on behalf of the Wisconsin Subclass.

636.    Mercedes designed, manufactured, marketed, sold, and/or leased Affected Vehicles to Plaintiff and Subclass members.  Mercedes affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles had no significant defects, complied with EPA and state emissions regulations, and would perform and operate properly when driven in normal usage.

637.    The Affected Vehicles purchased or leased by Plaintiff and the Subclass members were, in fact, defective, non-EPA-compliant, and unreliable, because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

638.   Mercedes intentionally concealed, suppressed, and failed to disclose the facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements.

639.   As alleged in this Complaint, at all relevant times, Mercedes has held out the Affected Vehicles to be EPA-compliant reduced emissions vehicles.  Mercedes disclosed certain details about the BlueTEC Clean Diesel engine, but nonetheless, Mercedes intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

640.   The truth about the defective emissions controls, unlawfully high emissions, and non-compliance with EPA emissions requirements was known only to Mercedes; Plaintiff and the Subclass members did not know of these facts and Mercedes actively concealed these facts from Plaintiff and Subclass members.

641.   Plaintiff and Subclass members reasonably relied upon Mercedes' deception. They had no way of knowing that Mercedes' representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Mercedes' deception on their own.   Rather, Mercedes intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicle emissions.

642.   Mercedes also concealed and suppressed material facts concerning what is evidently the true culture of Mercedes—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant

to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Mercedes because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing in cool weather.

643.   Mercedes' false representations were material to consumers, because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Mercedes well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars with reduced emissions, and they paid accordingly.

644.   Mercedes had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Mercedes, because Mercedes had exclusive knowledge as to such facts, and because Mercedes knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Mercedes also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each country, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at

issue.  Having volunteered to provide information to Plaintiff and Subclass members, Mercedes had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Mercedes represented to Plaintiff and Subclass members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective and unlawfully high emission vehicles.

645.    Mercedes actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Mercedes money, and it did so at the expense of Plaintiff and Subclass members.

646.    On information and belief, Mercedes has still not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of its referenced vehicles.

647.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly *reduced emissions* diesel cars manufactured by Mercedes, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information

concealed from them.  Plaintiff's and Subclass members' actions were justified.  Mercedes was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

648.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Mercedes' concealment of the true quality and quantity of those vehicles' emissions and Mercedes' failure to timely disclose the defect or defective design of the BlueTEC Clean Diesel engine system, the actual emissions qualities and quantities of Mercedes-branded vehicles, and the serious issues engendered by Mercedes' corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiff and Subclass members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

649.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Mercedes' fraudulent concealment of the defective emissions controls of the Affected Vehicles, and of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the Mercedes brand name attached to Plaintiff's and Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

650.    Accordingly, Mercedes is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

651.    Mercedes' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Mercedes made to them, in order to enrich Mercedes.  Mercedes' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

WHEREFORE, Plaintiffs, individually and on behalf of members of the Nationwide Class and State Subclasses, respectfully request that the Court enter judgment in their favor and against Mercedes, as follows:

A.      Certification of the proposed Nationwide Class and State Subclasses, including appointment of Plaintiffs' counsel as Class Counsel;

B.      An order temporarily and permanently enjoining Mercedes from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.      Injunctive relief in the form of a recall or free replacement program;

D.      Restitution, including at the election of Class members, recovery of the purchase price of their Affected Vehicles, or the overpayment or diminution in value of their Affected Vehicles;

E.      Damages, including punitive damages, costs, and disgorgement in an amount to be determined at trial, except that monetary relief under certain consumer protection statutes, as stated above, shall be limited prior to completion of the applicable notice requirements;

F.      An order requiring Mercedes to pay both pre- and post-judgment interest on any amounts awarded;

G.      An award of costs and attorneys' fees; and

H.      Such other or further relief as may be appropriate.

**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
*Attorneys for Plaintiff and the Proposed Classes*


By     /s/ James E. Cecchi
              JAMES E. CECCHI

Dated:  April 7, 2016

Steve W. Berman
Sean R. Matt
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 8th Avenue, Suite 3300
Seattle, Washington  98101
Tel: (206) 623-7292
Fax: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com

David Freydin
Timothy A. Scott
**LAW OFFICES OF DAVID FREYDIN, PC**
8707 Skokie Blvd., Suite 305
Skokie, Illinois  60077
Tel:  (847) 972-6157
Fax:  (866) 897-7577
david.freydin@freydinlaw.com

Jeffrey S. Goldenberg
**GOLDENBERG SCHNEIDER, L.P.A.**
One West Fourth Street, 18th Floor
Cincinnati, OH  45202-3604
Tel:  (513) 345-4291
Fax:  (513) 345-8294
jgoldenberg@gs-legal.com

*Attorneys for Plaintiff and the Proposed Classes*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all issues so triable.

**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.**
*Attorneys for Plaintiff and the Proposed Classes*


By    /s/ James E. Cecchi
              JAMES E. CECCHI

Dated:  April 7, 2016

Steve W. Berman
Sean R. Matt
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 8th Avenue, Suite 3300
Seattle, Washington  98101
Tel: (206) 623-7292
Fax: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com

David Freydin
Timothy A. Scott
**LAW OFFICES OF DAVID FREYDIN, PC**
8707 Skokie Blvd., Suite 305
Skokie, Illinois  60077
Tel:  (847) 972-6157
Fax:  (866) 897-7577
david.freydin@freydinlaw.com

Jeffrey S. Goldenberg
**GOLDENBERG SCHNEIDER, L.P.A.**
One West Fourth Street, 18th Floor
Cincinnati, OH  45202-3604
Tel:  (513) 345-4291
Fax:  (513) 345-8294
jgoldenberg@gs-legal.com

*Attorneys for Plaintiff and the Proposed Classes*